PER CURIAM.
Secretary of State Dawn K. Roberts appealed a judgment of the Second Circuit Court to the First District Court of Appeal, which certified to this Court that the judgment is of great public importance and requires immediate resolution by this *657 Court. We have jurisdiction. See art. V, § 3(b)(5), Fla. Const. Because we agree with the trial court’s determination that the ballot title and summary for Amendment 3 are clearly and conclusively defective, we affirm.
On July 23, 2010, the trial court ordered that Amendment 3 be removed from the November 2010 general election ballot, finding that “the ballot title and summary ... fail to fairly inform the voter, in clear and unambiguous language, of the chief purpose of the amendment.” Specifically, the court found the ballot title and summary for Amendment 3 “misleading in two material respects, both involving the additional homestead exemption, a chief aspect of the amendment.”
First, the court found that “[njeither the title nor the summary provide notice that the additional exemption is only available for properties purchased on or after January 1, 2010.” Second, the court found that the language “new homestead owners” in the title, coupled with “first-time homestead” in the summary, convey the message that to be eligible for the additional homestead exemption, the owner must have never before declared the property homestead. The court further found it misleading that the summary limits the exemption to persons not having owned a “principal residence” during the preceding eight years because Florida law does not define “principal residence” as the equivalent of “homestead” for tax purposes.
For the reasons expressed in detail below, we agree with the court that the ballot title and summary are confusing to the average voter. The lack of an effective date renders it impossible for a voter to know which homeowners would qualify for the exemption. Further, the ballot title and summary fail to mention that a married person could fail to qualify for the exemption because his or her spouse previously owned a residence. Finally, we agree that “[a] voter reading the title and summary could easily conclude that in order to be eligible for the additional homestead, a property owner would have to meet two conditions: have not owned a principal residence during the preceding eight years and have never previously declared the property homestead.”

General Principles Regarding Proposed Constitutional Amendments

The Florida Constitution gives the Legislature authority to propose amendments for submission to the electorate. See art. XI, § 1, Fla. Const. Article XI, section 1, provides that the Legislature may propose an amendment to the Florida Constitution by a “joint resolution agreed to by three-fifths of the membership of each house of the legislature.” Then the proposed constitutional amendment must be “submitted to the electors at the next general election.” Art. XI, § 5(a), Fla. Const. “Implicit in this provision is the requirement that the proposed amendment be accurately represented on the ballot; otherwise, voter approval would be a nullity.” Armstrong v. Harris, 773 So.2d 7, 12 (Fla.2000). The accuracy requirement in article XI, section 5, functions as a kind of “truth in packaging-” law for the ballot. Id. at 13. The accuracy requirement applies to all proposed constitutional amendments, including those proposed by the Legislature. Id. at 16.
The Court has recognized that “[ajlthough the constitution does not expressly authorize judicial review of amendments proposed by the Legislature, this Court long ago explained that the courts are the proper forum in which to litigate the validity of such amendments.” Armstrong, 773 So.2d at 13-14. Specifically, the Court has stated:
*658 Under our system of constitutional government regulated by law, a determination of whether an amendment to the Constitution has been validly proposed and agreed to by the Legislature depends upon the fact of substantial compliance or noncompliance with the mandatory provisions of the existing Constitution as to how such amendments shall be proposed and agreed to, and such determination is necessarily required to be in a judicial forum where the Constitution provides no other means of authoritatively determining such questions.
Armstrong, 773 So.2d at 14 (quoting Crawford v. Gilchrist, 64 Fla. 41, 59 So. 963, 966 (1912)).
Although this Court traditionally has accorded a measure of deference to constitutional amendments proposed by the Legislature, that deference “is not boundless, for the constitution imposes strict minimum requirements that apply across-the-board to all constitutional amendments, including those arising in the Legislature.” Armstrong, 773 So.2d at 14.
The accuracy requirement in article XI, section 5, imposes a strict minimum standard for ballot clarity. This requirement plays no favorites — it applies across-the-board to all constitutional amendments, including those proposed by the Legislature. The purpose of this requirement is above reproach — it is to ensure that each voter will cast a ballot based on the full truth. To function effectively — and to remain viable — a constitutional democracy must require no less.
Armstrong, 773 So.2d at 21.
Section 101.161(1), Florida Statutes (2009), is a “codification of the accuracy requirement implicit in article XI, section 5 of the Florida Constitution.” Advisory Op. to Att’y Gen. re Referenda Required for Adoption & Amendment Local Gov’t Comprehensive Land Use Plans, 902 So.2d 763, 770 (Fla.2005).
 Section 101.161(1) provides:
Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot after the list of candidates, followed by the word “yes” and also by the word “no,” and shall be styled in such a manner that a “yes” vote will indicate approval of the proposal and a “no” vote will indicate rejection. The wording of the substance of the amendment or other public measure and the ballot title to appear on the ballot shall be embodied in the joint resolution, constitutional revision commission proposal, constitutional convention proposal, taxation and budget reform commission proposal, or enabling resolution or ordinance. Except for amendments and ballot language proposed by joint resolution, the substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. In addition, for every amendment proposed by initiative, the ballot shall include, following the ballot summary, a separate financial impact statement concerning the measure prepared by the Financial Impact Estimating Conference in accordance with s. 100.371(5). The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
§ 101.161(1), Fla. Stat. (2009). Thus, section 101.161(1) provides that the substance of a proposed constitutional amendment must be printed on the ballot in “clear and *659 unambiguous language.” This Court has explained “that the ballot [must] be fair and advise the voter sufficiently to enable him intelligently to cast his ballot.” Askew v. Firestone, 421 So.2d 151, 155 (Fla.1982) (quoting Hill v. Milander, 72 So.2d 796, 798 (Fla.1954)). While the ballot title and summary must state in clear and unambiguous language the chief purpose of the measure, they need not explain every detail or ramification of the proposed amendment. Carroll v. Firestone, 497 So.2d 1204, 1206 (Fla.1986). The ballot must, however, give the voter fair notice of the decision he or she must make. Askew, 421 So.2d at 155. The purpose of section 101.161 is to ensure that voters are advised of the amendment’s true meaning. Advisory Op. to Att'y Gen. re Indep. Nonpartisan Comm’n to Apportion Legislative & Cong. Dists. which Replaces Apportionment by Legislature, 926 So.2d 1218, 1228 (Fla.2006).
This Court has stressed that a proposed amendment “must stand on its own merits and not be disguised as something else.” Askew, 421 So.2d at 156. “A ballot title and summary cannot either ‘fly under false colors’ or ‘hide the ball’ as to the amendment’s true effect.” Armstrong, 773 So.2d at 16.
A court may declare a proposed constitutional amendment invalid only if the record shows that the proposal is clearly and conclusively defective; the standard of review in such cases is de novo. Armstrong, 778 So.2d at 11. In assessing the ballot title and summary for compliance with section 101.161(1), the reviewing court should ask two questions, first, whether the ballot title and summary “fairly inform the voter of the chief purpose of the amendment,” and second, “whether the language of the title and summary, as written, misleads the public.” Florida Dep’t of State v. Slough, 992 So.2d 142, 147 (Fla.2008). However, the Court does not consider the substantive merit of the proposed amendment. Id.
The title and summary must also be accurate and informative. See Advisory Opinion to the Attorney Gen. re Term Limits Pledge, 718 So.2d 798, 803 (Fla.1998). These requirements make certain that the “electorate is advised of the true meaning, and ramifications, of an amendment.” Advisory Opinion to the Attorney Gen. re Tax Limitation, 644 So.2d 486, 490 (Fla.1994) (quoting Askew, 421 So.2d at 156). A proposed amendment must be removed from the ballot when the title and summary do not accurately describe the scope of the text of the amendment, because it has failed in its purpose. See Term Limits Pledge, 718 So.2d at 804.
Finally, this Court has held that the ballot title and summary must be read together in determining whether the ballot information properly informs the voters. See Advisory Opinion to the Atty. Gen. re Voluntary Universal Pre-Kindergarten Educ., 824 So.2d 161, 166 (Fla.2002). This Court will presume that the average voter has a certain amount of common understanding and knowledge. See Advisory Op. to Att’y Gen. re Protect People from the Health Hazards of Second-Hand Smoke, 814 So.2d 415 (Fla.2002).

Whether the Ballot Title and Summary for Amendment 3 Complies With the Requirements of Section 101.161(1)

Here, we find that the ballot title and summary for Amendment 3 are neither accurate nor informative. If adopted, Amendment 3 would, in relevant part, provide a temporary additional homestead exemption for a single property for a period not to exceed five years in an amount equal to twenty-five percent of the just value of the property during the first year *660 and reduced by at least twenty percent each subsequent year beginning January 1, 2011, for persons who purchase a qualifying property on or after January 1, 2010, who have not owned a “principal residence” for the preceding eight years and, if married, whose spouses have not owned a “principal residence” for the preceding eight years. However, if a voter read the ballot title and summary alone, it would appear that Amendment 3, if adopted, would, in relevant part, provide a temporary additional homestead exemption for a period not to exceed five years in an amount equal to twenty-five percent of the just value of a “first-time homestead” during the first year and reduced by at least twenty percent each subsequent year for persons who have not owned a “principal residence” for the preceding eight years. Because of the omissions in the ballot title and summary, a voter would not be clearly informed who qualifies for the proposed exemption; that a person’s spouse could exempt him or her from qualifying for the additional homestead exemption; that the measure would be effective beginning January 1, 2011, for homes purchased on or after January 1, 2010; and that the additional exemption is available for only a single property.
The measure is on the November 2010 general election ballot. Homestead exemptions are available on January 1 of any tax year for eligible homes purchased on or after January 1 of the preceding year. See art. VII, § 4(d), Fla. Const.; Zingale v. Powell, 885 So.2d 277 (Fla.2004). However, because the effective date of the measure is excluded from the ballot title and summary, the omission is misleading. Voters have no reasonable way to ascertain which “new homestead owners” qualify for the proposed exemption unlike in each of the previous amendments relating to homestead exemptions, where the effective date was published on the ballot. See, e.g., H.J. Res. 358, Reg. Sess. (Fla.2006) (Art. XII, § 26, Fla. Const.); S.J. Res. 2D, Spec. Sess. “D” (Fla.2007) (Art. XII, § 27, Fla. Const.).
Secondly, the circuit court stated that it is misleading for the ballot title and summary to use both “principal residence” and “first-time homestead.” In context, “first-time homestead” is used in the following sentence: “Under the exemption, 25 percent of the just value of a first-time homestead, up to $100,000, will be exempt from property taxes.” In other words, the term is used only to define the value of the exemption. However, when both the title and summary are read in context, “new homestead owners” could mean “persons who have not owned a principal residence during the preceding 8 years,” and those who have never previously claimed a homestead exemption. This language is ambiguous. As in Advisory Opinion to the Attorney General re Right of Citizens to Choose Health Care Providers, 705 So.2d 563 (Fla.1998), the discrepancy in the language is misleading. Id. at 566 (finding material and misleading a ballot summary that asserted that “citizens” would have the right to choose, while the amendment itself referred to “every natural person”).
Additionally, there is a material omission from the ballot title and summary that is misleading to the voter that was not raised by the parties. Because we review the proposed amendment de novo, we may also consider whether any portion of the title and summary are misleading. Notably, the ballot title and summary fail to note that the additional exemption is not available to a person whose spouse has owned a principal residence in the preceding eight years. This omission clouds the eligibility requirements for the additional homestead exemption in a material way. *661 Because this exclusion is omitted from the ballot title and summary, voters may be misled into believing they qualify for the additional exemption when they do not, or conversely believe they do not qualify when they do.
For the foregoing reasons, we affirm the order of the Second Circuit enjoining Secretary Roberts from placing Amendment 3 on the November 2010 general election ballot.
It is so ordered.
PARIENTE, LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
POLSTON, J., dissents with an opinion, in which CANADY, C.J., concurs.