PER CURIAM.
 

 This appeal concerns an attack on Amendment 8, a legislatively proposed amendment to the Florida Constitution concerning class size, brought by the Florida Education Association (FEA), Andy Ford, and Lynette Estrada. The trial court upheld Amendment 8 and ordered that it remain on the November 2010 general election ballot. On appeal, the First District Court of Appeal certified to this Court that the trial court’s judgment is of great public importance and requires immediate resolution by this Court. We have jurisdiction.
 
 See
 
 art. V, § 3(b)(5), Fla. Const.
 

 We accepted jurisdiction and granted expedited review in light of the pending election of November 2, 2010.
 
 [1]
 
 As further explained below, we affirm the judgment of the trial court.
 

 FACTUAL AND PROCEDURAL HISTORY
 

 This case involves a joint resolution of the Florida Legislature that proposes an amendment to the Florida Constitution concerning class size.
 
 See
 
 Fla. S.J. Res. 2 (2010) (joint resolution proposing to amend article IX, section 1, of the Florida Constitution relating to class sizes) (hereinafter Joint Resolution). The proposed amendment, which has been designated as Amendment 8 by the Division of Elections, was passed by the constitutionally required three-fifths vote of the membership of each house during the 2010 Florida legislative session. The Joint Resolution contained the text of the proposed amendment and a ballot title and summary that
 
 *698
 
 the Legislature specified should be placed on the ballot.
 

 The ballot title and summary for proposed Amendment 8 provides:
 

 REVISION OF THE CLASS SIZE REQUIREMENTS FOR PUBLIC SCHOOLS — The Florida Constitution currently limits the maximum number of students assigned to each teacher in public school classrooms in the following grade groupings: for prekindergarten through grade 3, 18 students; for grades 4 through 8, 22 students; and for grades 9 through 12, 25 students. Under this amendment, the current limits on the maximum number of students assigned to each teacher in public school classrooms would become limits on the average number of students assigned per class to each teacher, by specified grade grouping, in each public school. This amendment also adopts new limits on the maximum number of students assigned to each teacher in an individual classroom as follows: for prekindergarten through grade 3, 21 students; for grades 4 through 8, 27 students; and for grades 9 through 12, 30 students. This amendment specifies that class size limits do not apply to virtual classes, requires the Legislature to provide sufficient funds to maintain the average number of students required by this amendment, and schedules these revisions to take effect upon approval by the electors of this state and to operate retroactively to the beginning of the 2010-2011 school year.
 

 The revised language and changes to article IX, section 1, were also set forth in the Joint Resolution and provided in pertinent part as follows (words stricken are deletions; words underlined are additions):
 

 ARTICLE IX EDUCATION
 

 SECTION 1. Public education.—
 

 (a)_ To assure that children attending public schools obtain a high quality education, the legislature shall make adequate provision to ensure that, by the beginning of the 2010-2011 2040 school year and for each school year thereafter, there are a sufficient number of classrooms so
 

 (1) Within each public school, the average maximum number of students who are assigned per class to each teacher who is teaching in-publie-school-class-rooms — for prekindergarten through grade 3 does not exceed 18 students and the maximum number of students assigned to each teacher in an individual classroom does not exceed 21 students;
 

 (2) Within each public school, the average maximum number of students who are assigned per class to each teacher who is teaching in public school classrooms for grades 4 through 8 does not exceed 22 students and the maximum number of students assigned to each teacher in an individual classroom does not exceed 27 students; and
 

 (3) Within each public school, the average maximum number of students who are assigned per class to each teacher who is teaching in public school classrooms-for- grades 9 through 12 does not exceed 25 students and the maximum number of students assigned to each teacher in an individual classroom does not exceed 30 students.
 

 The class size requirements of this subsection do not apply to extracurricular or virtual classes. Payment of the costs associated with meeting reducing c-lass-size-to- meet these requirements is the responsibility of the state and not of local school schools districts. Beginning with-lhe-2003-2004 fiscal year. The legislature shall provide sufficient funds to maintain reduce the average number of
 
 *699
 
 students required by in each classroom by at least two students-per year until the-maximum ■ -number-of-students-per-classroom does not exceed the requirements-of this subsection.
 

 FEA, Andy Ford, and Lynette Estrada filed a complaint on July 23, 2010, asking the trial court to determine whether the ballot summary complies with the requirements of section 101.161(1), Florida Statutes (2009). Both sides submitted motions for summary judgment, agreeing that there were no issues of material fact for determination.
 

 The trial court rejected the challenge to Amendment 8:
 

 [Wjhen read together, the ballot title and summary clearly and unambiguously advise the voter that the Legislature is still obligated to provide the funding required to meet the class size approved by the voter if the amendment passes, and it clearly and unambiguously advises the voter of the new class size and attendant funding obligation.
 

 The trial court found that the ballot title and summary met the requirements of law and ordered the amendment to remain on the ballot for the November 2010 general election.
 

 ANALYSIS
 

 The standard of review of the validity of a proposed constitutional amendment is de novo.
 
 Armstrong v. Harris,
 
 773 So.2d 7, 11 (Fla.2000). In reviewing the validity of Amendment 8, we will first set forth the requirements of law that apply to proposed amendments and explain the scope of our review. We will then explain the history of the Class Size Amendment adopted in 2002. Finally, we will evaluate whether Amendment 8 comports with the requirements of law. For the reasons explained below, we conclude that it does.
 

 Requirements for Proposed Constitutional Amendments
 

 The Florida Constitution gives the Legislature authority to propose amendments for submission to the electorate.
 
 See
 
 art. XI, § 1, Fla. Const. Article XI, section 1, provides that the Legislature may propose an amendment to the Florida Constitution by a “joint resolution agreed to by three-fifths of the membership of each house of the legislature.”
 
 Id.
 
 Then the proposed constitutional amendment must be “submitted to the electors at the next general election.” Art. XI, § 5(a), Fla. Const. “Implicit in this provision is the requirement that the proposed amendment be
 
 accurately
 
 represented on the ballot; otherwise, voter approval would be a nullity.”
 
 Armstrong,
 
 773 So.2d at 12. “[T]he accuracy requirement in article XI, section 5, functions as a kind of ‘truth in packaging law for the ballot.”
 
 Id.
 
 at 13. The accuracy requirement applies to all proposed constitutional amendments, including those proposed by the Legislature.
 
 Id.
 
 at 16.
 

 The Court has recognized that “[although the constitution does not expressly authorize judicial review of amendments proposed by the Legislature, this Court long ago explained that the courts are the proper forum in which to litigate the validity of such amendments.”
 
 Id.
 
 at 13-14 (footnote omitted). Specifically, the Court has stated:
 

 Under our system of constitutional government regulated by law, a determination of whether an amendment to the Constitution has been validly proposed and agreed to by the Legislature depends upon the fact of substantial compliance or noncompliance with the mandatory provisions of the existing Constitution as to how such amendments shall be proposed and agreed to,
 
 *700
 
 and such determination is necessarily-required to be in a judicial forum where the Constitution provides no other means of authoritatively determining such questions.
 

 Id.
 
 at 14 (emphasis omitted) (quoting
 
 Crawford v. Gilchrist,
 
 64 Fla. 41, 59 So. 968, 966 (1912)).
 

 This Court has traditionally “accorded a measure of deference to constitutional amendments proposed by the Legislature.”
 
 Id.
 
 at 21. However, that deference “is not boundless, for the constitution imposes strict minimum requirements that apply across-the-board to all constitutional amendments, including those arising in the Legislature.”
 
 Id.
 
 at 14.
 

 The accuracy requirement in article XI, section 5, imposes a strict minimum standard for ballot clarity. This requirement plays no favorites — it applies across-the-board to all constitutional amendments, including those proposed by the Legislature. The purpose of this requirement is above reproach — it is to ensure that each voter will cast a ballot based on the full truth. To function effectively — and to remain viable — a constitutional democracy must require no less.
 

 Id.
 
 at 21 (emphasis omitted).
 

 Section 101.161(1), Florida Statutes (2009), is a “codification of the accuracy requirement implicit in article XI, section 5 of the Florida Constitution.”
 
 Advisory Op. to Att’y Gen. re Referenda Required for Adoption & Amend. of Local Gov’t Comprehensive Land Use Plans,
 
 902 So.2d 763, 770 (Fla.2005). Thus, section 101.161(1) provides that the substance of a proposed constitutional amendment must be printed on the ballot in “clear and unambiguous language.”
 

 In reviewing the validity of ballot language submitted to the voters for a proposed constitutional amendment, this Court does not consider or review the substantive merits or the wisdom of the amendment.
 
 See Fla. Dep’t of State v. Slough,
 
 992 So.2d 142, 147 (Fla.2008); As
 
 kew v. Firestone,
 
 421 So.2d 151, 155 (Fla.1982). Rather, our task is to determine whether the ballot language sets forth the substance of the amendment in a manner that satisfies the requirements of section 101.161, Florida Statutes, and article XI, section 5, of the Florida Constitution.
 

 The purpose of a ballot title and summary is “to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot.”
 
 Advisory Op. to the Att’y Gen. re Right of Citizens to Choose Health Care Providers,
 
 705 So.2d 563, 566 (Fla.1998) (quoting
 
 Advisory Op. to Att’y Gen.-Fee on Everglades Sugar Prod.,
 
 681 So.2d 1124, 1127 (Fla.1996)). To comply with the requirements of law, the ballot language “must state the chief purpose of the proposed amendment.”
 
 Armstrong,
 
 773 So.2d at 18. This Court has explained that the ballot must “advise the voter sufficiently to enable him intelligently to cast his ballot.”
 
 Askew,
 
 421 So.2d at 155 (emphasis omitted) (quoting
 
 Hill v. Milander,
 
 72 So.2d 796, 798 (Fla.1954)). While the ballot title and summary must state in clear and unambiguous language the chief purpose of the measure, they need not explain every detail or ramification of the proposed amendment.
 
 See Carroll v. Firestone,
 
 497 So.2d 1204, 1206 (Fla.1986). The ballot language must, however, give “the voter fair notice of the decision he [or she] must make.”
 
 Askew,
 
 421 So.2d at 155.
 

 A court may declare a proposed constitutional amendment invalid
 
 *701
 
 only if the record shows that the proposal is clearly and conclusively defective.
 
 Armstrong,
 
 773 So.2d at 11. In assessing the ballot title and summary, the reviewing court should ask two questions: First, whether the ballot title and summary “fairly inform the voter of the chief purpose of the amendment,” and second, “whether the language of the title and summary, as written, misleads the public.”
 
 Slough,
 
 992 So.2d at 147 (quoting
 
 Advisory Op. to Att’y Gen. re Prohibiting State Spending for Experimentation that Involves the Destruction of a Live Human Embryo,
 
 959 So.2d 210, 213-14 (Fla.2007)). This Court presumes that the average voter has a certain amount of common understanding and knowledge.
 
 See Advisory Op. to Att’y Gen. re Protect People from the Health Hazards of Second-Hand Smoke,
 
 814 So.2d 415, 419 (Fla.2002).
 

 This evaluation also includes consideration of the amendment’s “true meaning, and ramifications.”
 
 Armstrong,
 
 773 So.2d at 16 (quoting
 
 Askew,
 
 421 So.2d at 156). The unifying principle for all proposed constitutional changes is that the voters “must be able to comprehend the sweep of each proposal from a fair notification in the proposition itself that is neither less nor more extensive than it appears to be.”
 
 Smothers v. Smith,
 
 338 So.2d 825, 829 (Fla.1976). The proposed amendment “must stand on its own merits and not be disguised as something else.”
 
 Askew,
 
 421 So.2d at 156. “A ballot title and summary cannot either ‘fly under false colors’ or ‘hide the ball’ as to the amendment’s true effect.”
 
 Armstrong,
 
 773 So.2d at 16.
 

 The 2002 Class Size Amendment
 

 Because Amendment 8 would amend the 2002 Class Size Amendment passed by the voters, we begin with a review of that amendment. In 2002, an amendment to article IX, section 1, of the Florida Constitution was proposed by citizen initiative. The summary for the proposed amendment provided:
 

 Proposes an amendment to the State Constitution to require that the Legislature provide funding for sufficient classrooms so that there be a maximum number of students in public school classrooms for various grade levels; requires compliance by the beginning of 2010 school year; requires the Legislature, and not local school districts, to pay for the costs associated with reduced class size; prescribes a schedule for phased-in funding to achieve the required maximum class size.
 

 Advisory Op. to the Att’y Gen. re Flo’s Amend, to Reduce Class Size,
 
 816 So.2d 580, 581 (Fla.2002).
 

 In its evaluation of the initiative, this Court first analyzed whether the proposed amendment met the single subject requirement. A group who opposed the ballot initiative contended that the amendment violated the single subject requirement “because it requires voters who may favor a reduction in class size in Florida to also vote for whatever unspecified and unlimited expenditure of State funds may be necessary to construct or purchase additional classrooms for public schools.”
 
 Id.
 
 at 582. This Court rejected that argument: “[T]he ballot initiative deals with a single subject — the reduction of class size. The fact that the ballot initiative requires the Legislature to fund this reduction does not constitute ... impermissible logrolling ..., but rather provides the details of how the ballot initiative will be implemented”
 
 Id.
 
 at 583.
 

 The Court further concluded that the initiative would not substantially alter or perform multiple functions of state government because it did “not specify a certain percentage of the budget or a specific amount to be spent on reducing class size.”
 
 *702
 

 Id.
 
 at 584. The Court also stated that the amendment would not substantially alter or perform the functions of the local school boards:
 

 Although, as a result of the amendment, the Legislature may choose to fund the building of new schools to achieve the maximum classroom size set as a goal of the proposed amendment, this is not the only method of ensuring that the number of students meets the numbers set forth in the amendment. Rather than restricting the Legislature, the proposed amendment gives the Legislature latitude in designing ways to reach the class size goal articulated in the ballot initiative, and places the obligation to ensure compliance on the Legislature, not the local school boards.
 

 Id.
 
 at 584-85.
 

 In addition to whether the amendment met the single subject requirement, this Court evaluated whether the ballot information properly informed the voters in accordance with the requirements of section 101.161(1). The Court concluded that the ballot language informed voters of the amendment’s chief purpose and effect:
 

 The title of this initiative is “Florida’s Amendment to Reduce Class Size.” The ballot summary makes clear that the Legislature is responsible for providing funding to reduce the number of students in public school classrooms in various grade levels. Thus, when read together, the ballot title and summary clearly inform voters of the amendment’s chief purpose, and provide an accurate description of the amendment.
 

 Id.
 
 at 585. The Court also stated that “the primary purpose of the amendment — the legislative funding of reduced classroom size — is adequately disclosed in the ballot title and summary.”
 
 Id.
 

 The Florida voters subsequently approved the 2002 Class Size Amendment, adding both a maximum class size requirement and an obligation on the Legislature to fund the class size requirement to article IX, section 1, of the Florida Constitution.
 

 Whether Amendment 8 Complies with the Requirements of Law
 

 We begin by noting that the ballot title and summary clearly and unambiguously explain the text of the constitutional amendment. Appellants do not contest this. The ballot title clearly sets forth the substance of the amendment: “REVISION OF THE CLASS SIZE REQUIREMENTS FOR PUBLIC SCHOOLS.” The ballot summary unambiguously explains the existing class size requirements as well as how the required class sizes would change. Appellants also agree that the ballot summary discloses a legislative funding obligation upon passage of the proposed amendment. Indeed, the summary states that it shall be the Legislature’s responsibility to fund this amendment by stating that the amendment “requires the Legislature to provide sufficient funds to maintain the average number of students required by this amendment.”
 

 Although the Appellants agree that the ballot summary unambiguously explains the text of the amendment, they contend that it is defective because it fails to state that the amendment’s chief purpose and effect is to reduce the amount of state funding for education and, further, that the ballot summary is misleading for its failure to disclose the financial impact. Essentially, Appellants’ contention is that the summary is defective for failing to explain that this amendment will substantially reduce the amount of the state’s current constitutional obligation to fund the existing class size restrictions.
 

 We disagree that the failure to address the effect on state class size funding ren
 
 *703
 
 ders the ballot summary defective. Although the dollar amount required to fund the class size requirements will be affected by the change in the formula for class sizes, the constitutional obligation of the state to provide “sufficient funds” for the revised class size requirements is not being altered. Under both the current provision and under Amendment 8, Floridians would have the same right to have the state provide “sufficient funds” for the mandated class sizes. As stated by the trial court:
 

 Both the 2002 amendment to Article IX, Section 1, and Amendment 8 have as the stated purpose the establishment of a maximum class size, and the obligation of the Legislature to fund whatever maximum class size the voters elect. The voters will decide what the class size will be, and Amendment 8 is not confusing or misleading as to that being the decision the voter makes. Amendment 8, if passed, would not alter the Legislature’s duty to fund the required class size, nor does it shift any funding obligation to the school boards. The ballot summary is not misleading in that respect in that it specifically provides and “requires the Legislature to provide sufficient funds to maintain the average number of students required by this amendment.”
 

 Further, under both the current provision and under Amendment 8, Floridians would have the same right to have the Legislature “make adequate provision” to ensure that there are a sufficient number of classrooms for the required class sizes. Thus, this case is unlike
 
 Armstrong
 
 and
 
 Askew,
 
 where we struck proposed amendments for failing to disclose that they would diminish an existing constitutional right.
 

 Although the logical effect of increasing the maximum number of students will be to reduce the dollar amount of state class size funding, this effect flows naturally from the chief purpose — to revise and relax class sizes while providing that the Legislature has the attendant funding obligation. Further, we note that a voter would be able to draw a common-sense conclusion from a review of the ballot summary that the amount of funding needed to sufficiently fund the revised class sizes will likely be reduced. Accordingly, we conclude that the ballot language gives “the voter fair notice of the decision he must make,”
 
 Armstrong,
 
 773 So.2d at 15, and is not defective for failing to state that the passage of Amendment 8 may affect the amount of state class size funding.
 

 Appellants also argue that the ballot language indicating that the Legislature is required to provide sufficient funds to “maintain the average number of students” required by the amendment is affirmatively misleading because it hides from voters the fact that funding levels will actually be reduced. We conclude that the use of the word “maintain” in the ballot summary is not misleading. Rather, it accurately conveys that the Legislature, not the school district, is the entity responsible for continuously providing funding for the class sizes required by the amendment and does not carry an implication that the amount of funding will not be reduced as a result of the amendment.
 

 Finally, Appellants contend that the summary is misleading for failing to mention that the constitution currently mandates the Legislature to provide funding to reduce class sizes. Thus, they assert, the current amendment could mislead a voter into believing that Amendment 8 would shift the funding responsibility for class sizes from the local school districts to the Legislature. Appellants argue that as a result of this omission, some voters are likely to believe that their local school districts are currently forced to fund the
 
 *704
 
 requirements and thus a favorable vote on the amendment is necessary to lessen the burden on local school districts or to avoid an increase in local property taxes.
 

 Our test in determining the validity of the ballot title and summary is not what “some voters” might believe but rather whether the ballot title and summary provide the voter with “fair notice of the decision he [or she] must make.”
 
 Askew,
 
 421 So.2d at 155. The voters “must be able to comprehend the sweep of each proposal from a fair notification in the proposition itself that is neither less nor more extensive than it appears to be.”
 
 Smothers,
 
 338 So.2d at 827. The Court will presume that the average voter has a certain amount of common understanding and knowledge.
 
 See Second-Hand Smoke,
 
 814 So.2d at 419.
 

 Although there are cases where this Court has held that a ballot summary was defective for failing to mention an existing constitutional obligation,
 
 see, e.g., Armstrong,
 
 773 So.2d at 17;
 
 Fla. Dep’t of State v. Fla. State Conference of NAACP Branches,
 
 43 So.3d 662, 668 (Fla.2010), we conclude that, here, the failure to mention the Legislature’s existing funding obligation does not render Amendment 8’s ballot summary defective. The ballot summary is not affirmatively misleading: there is nothing in the ballot summary that would imply or affirmatively convey that the local school districts currently have the funding obligation.
 

 CONCLUSION
 

 We conclude that the ballot title and summary accurately represent the chief purpose of the amendment. It further provides fair notice of what the amendment contains and does not mislead the voters as to the amendment’s true effect. Accordingly, we hold that the ballot language is not defective and that Amendment 8 complies with the requirements of law. We affirm the trial court’s judgment that Amendment 8 shall remain on the ballot for the November 2010 general election.
 

 It is so ordered.
 

 CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.
 

 [1]
 

 . The Appellees objected to the First District certifying this case because the ballots have already been printed and the Appellants delayed filing their complaint until July 2010. However, we consider that it is preferable for this Court to determine any issues regarding whether the ballot title and summary are defective
 
 before
 
 the election.