WARNER, J.
The City of Riviera Beach and the Riviera Beach Community Redevelopment Agency appeal from a final judgment of the trial court allowing a charter question to appear on the ballot for the November 2, 2010 general election to ask voters whether the city’s charter should be amended. The appellants claim that the ballot language was ambiguous; that the question was placed on the ballot in violation of section 101.161(1), Florida Statutes, which requires the council to pass an enabling resolution, which the council did not vote affirmatively to do; and that the ballot question was unconstitutional because it was in violation of section 163.3167(12), Florida Statutes, which prohibits a referendum process involving a comprehensive land use change affecting five or fewer parcels of land. We affirm on all issues, finding that the ballot language is not ambiguous; that the city’s stipulation that the city council approved by motion the placement of the referendum on the ballot satisfied its ministerial duty pursuant to section 101.161(1); and that the ballot did not involve a comprehensive plan amendment, rendering section 163.3165(12) inapplicable.
Riviera Beach Citizens Task Force and Emma Bates organized a petition to amend the City’s charter by referendum. They proposed changing Article VII, section 3.5 of the City’s charter by adding the following underlined language:
The city’s municipal marina shall not be sold. However, the city council may enter into management, license or lease agreements with marina users and/or outside operators for a term of not more than 50 years in order to facilitate marina activities, use or operations and to provide that the use of dedicated submerged] public lands be limited to municipal park and recreational purposes according to the terms State of Florida Dedication No. 2UU38-A (2725-50) by the Board of Trustees of the Internal Improvement Fund, to include the Marina and public Municipal Marina properties, Newcomb Hall, Bicentennial Park, and Spanish Court shall be owned, managed, and operated solely by the City of Riviera Beach for municipal and public uses; the use of the manna shall not be changed to industrial commercial, to include an industrial commercial boat repair operation.
The Task Force obtained a sufficient number of signatures on the petition and sought to have the issue included on the ballot on the November 2, 2010 general election. The ballot summary to be placed on the ballot read:
AMENDMENT TO CITY MARINA PROPERTY
Shall The City Of Riviera Beach Charter Be Amended To Provide That The Use of Dedicated Submerged Public Lands At The City Marina Remain Limited To Municipal Park And Recreational Purposes According To Florida Dedication No 24438-A; (2725) the Municipal Marina Properties, Newcomb Hall, Bicentennial Park, And Spanish Court Shall Be Owned, Managed, And Operated Solely By the City Of Riviera Beach; The Municipal Marina Properties Shall Not Per *21 mit Industrial Commercial Boat Repair Operations?
The Supervisor of Elections filed a certification with the City asserting that the Task Force’s petition was in accordance with section 166.031(1). The City Clerk presented the initiative to the City Council but did not request a resolution, because it was her opinion that none was required pursuant to the statute. Nevertheless, with the approval of the council the City Clerk sent a letter to the Supervisor of Elections which acknowledged that the City Council disagreed with the language in the petition but stated that a majority have agreed to comply with section 166.031 and have the referendum placed on the ballot at the general election. The Clerk’s letter contained the proposed ballot summary from the Task Force. The supervisor received the City Clerk’s letter and placed the ballot summary and title on the ballot for the November 2, 2010 general election. On September 1, 2010, the City Council agreed by motion but without an enabling resolution to allow the amendment to be put on the ballot. The City Clerk sent a letter to the Supervisor of Elections and the Supervisor placed the Task Force’s proposed charter amendment question on the ballot.
The Community Redevelopment Agency (“CRA”), which owns Spanish Courts, filed a complaint in the circuit court seeking declaratory and injunctive relief regarding the proposed charter amendment and ballot question. Subsequently, the City also filed a similar complaint in the circuit court seeking a determination that the amendment and question were unconstitutional and invalid. The City’s and CRA’s complaints were consolidated and the trial court conducted a trial, ultimately issuing a final judgment, ruling that the proposed charter amendment and question were clear and not misleading, revealed the chief purpose of the proposed charter amendment, and thus, could appear on the ballot. The City and CRA now appeal.
We review de novo the issue of whether the ballot summary was misleading. Armstrong v. Harris, 773 So.2d 7, 11 (Fla.2000); Citizens for Term Limits & Accountability, Inc. v. Lyons, 995 So.2d 1051, 1054 (Fla. 1st DCA 2008). “[0]ur task is to determine whether the ballot language sets forth the substance of the amendment in a manner that satisfies the requirements of section 101.161, Florida Statutes....” Fla. Educ. Ass’n v. Florida Dep’t of State, 48 So.3d 694, 700 (Fla.2010).
Section 101.161(1),- Florida Statutes (2010), requires that “the substance of ... [any] ... public measure [submitted to the voters] shall be printed in clear and unambiguous language.... ” The ballot language “shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure.” The purpose of this requirement is to
“advise the voter sufficiently to enable him intelligently to cast his ballot.” Askew [v. Firestone], 421 So.2d [151, 155 (Fla.1982) ] (emphasis omitted) (quoting Hill v. Milander, 72 So.2d 796, 798 (Fla.1954)). While the ballot title and summary must state in clear and unambiguous language the chief purpose of the measure, they need not explain every detail or ramification of the proposed amendment. See Carroll v. Firestone, 497 So.2d 1204, 1206 (Fla.1986). The ballot language must, however, give “the voter fair notice of the decision he [or she] must make.” Askew, 421 So.2d at 155.
Fla. Educ. Ass’n, 48 So.3d at 700.
Two questions must be asked in order to determine if the proposed language is defective: first, whether the ballot title and summary fairly inform the voter of the chief purpose of the public *22 measure, and second, whether the language of the title and summary, as written, misleads the public. Fla. Dep’t of State v. Slough, 992 So.2d 142, 147 (Fla.2008). Only where the record shows that the ballot language is “clearly and conclusively defective” should the court invalidate the ballot question. Armstrong, 773 So.2d at 11. “A ballot title and summary cannot either ‘fly under false colors’ or ‘hide the ball’ as to the amendment’s true effect.” Id. at 16. A ballot summary must not be “affirmatively misleading.” Fla. Educ. Ass’n, 48 So.3d at 704.
Judged by the foregoing standard, the ballot summary does not mislead and cannot be said to be clearly and conclusively defective. The ballot summary informs voters of the amendment’s chief purpose. The first portion of the question limits the use of the City Marina to municipal and recreational purposes in accordance with the state dedication. The second portion requires that each of the identified properties (municipal marina properties, New-comb Hall, Bicentennial Park and Spanish Court) be owned, managed and operated solely by the City. The third portion prohibits “industrial commercial boat repair operations within the Municipal Marina Properties.” Although it might have been more artfully phrased, it does not mislead or “hide the ball” as to its intended purpose.
Most of the City’s objections involve the wording of the charter amendment itself, not the ballot summary. It too is not a model of clarity; however, it is not so ambiguous that its meaning cannot be understood, and the ballot summary provides an explanation of its purpose. As the trial court said in its final judgment, “It is not necessary to explain every detail since the summary is limited to 75 words and this summary by the Court’s cou[n]t is 74 words. It provides the voter fair notice of the proposal’s true meaning.” We agree.
As a second ground for contesting the ballot summary, the City argues that because it did not pass a resolution including the ballot summary, the amendment referendum should not have been placed on the ballot at all. It relies on section 101.161(1) as requiring it to pass a resolution before an amendment may be placed on the ballot, because the ballot title and ballot summary shall be contained within an “enabling resolution or ordinance.” However, section 166.031 describes the method by which the City and citizens may initiate a charter amendment by referendum (by ordinance or petition) and states:
The governing body of a municipality may, by ordinance, or the electors of a municipality may, by petition signed by 10 percent of the registered electors as of the last preceding municipal general election, submit to the electors of said municipality a proposed amendment to its charter, which amendment may be to any part or to all of said charter except that part describing the boundaries of such municipality.
§ 166.031(1), Fla. Stat. (2010) (emphasis added). The trial court found that section 166.031 does not require the passage of a resolution. In fact, the City Clerk maintained that she did not request a resolution from the Council, because none was necessary pursuant to section 166.031. The trial court explained:
The City’s role in this regard was ministerial, without discretion, if a resolution had been required.
“The law is well settled that a court of equity as a general rule will not restrain the holding of an election because a free election in a democracy is a political matter to be determined by the electorate and not the courts.... *23 Limited exceptions to this rule have been recognized but only on the narrowest grounds.” E.g. Rivergate Restaurant Corporation v. Metro. Dade County, 369 So.2d 679 (Fla. 3d DCA 1979).
The Court would not be proceeding in line with this principle if it were to consider an otherwise proper referendum with proper ballot language and yet restrain the holding of this election on this basis where no enabling City Council resolution was specifically required.
The City cites Shulmister v. City of Pompano Beach, 798 So.2d 799 (Fla. 4th DCA 2001), to support its contention that section 101.161 mandates that the governing body pass a resolution before a charter amendment may be placed on the ballot. In Shulmister, a petition for charter amendment was presented to the city which passed an enabling resolution containing a ballot summary in excess of 75 words. Because the ballot summary did not comply with section 101.161(1), the supervisor of elections refused to place the amendment on the ballot. The city, however, refused to correct the ballot summary. We held that the city had a ministerial duty to supply a summary in compliance with the statute so that the amendment could be placed on the ballot.
Shulmister did not hold that an amendment proposed by citizen’s initiative could not appear on the ballot without an enabling resolution. While we said that the City had a duty to place the charter provision on the ballot for the next election, the city in Shulmister had passed an enabling resolution but with an improper ballot summary so that it was rejected by the supervisor of elections. We merely required the city to correct the mistake.
Here, the city did not pass a resolution but acceded to the submission of the amendment with the ballot summary prepared by the appellees to the supervisor of elections. Later, the council passed a motion approving the placement on the ballot but disapproving the ballot language. Although the city abdicated its responsibility to draft a ballot summary, it did permit the submission of the ballot summary drafted by the Task Force to the supervisor of elections. Had the city not submitted the provision for placement on the ballot, it would have violated its duty under section 166.031. The city cannot complain that its own failure to perform its duty can prevent the citizens from voting on the charter amendment proposal.
Finally, the appellants argue that the proposed charter amendment is invalid because it violates section 163.3167(12), Florida Statutes (2010), which provides:
An initiative or referendum process in regard to any development order or in regard to any local comprehensive plan amendment or map amendment that affects five or fewer parcels of land is prohibited.
The simple response to this claim is that the amendment on the ballot was not one involving a development order or a local comprehensive plan amendment or map amendment. The appellants claim that adoption of the amendment will require an amendment to the comprehensive plan, because the properties are not properly zoned for municipal or public uses. The properties mentioned in the amendment are within a “Downtown Mixed Use” category or “Working Waterfront” which is a subcategory of “Industrial and Related Uses.” Riviera Beach, FL, Ordinance 3066, Comprehensive Plan, Objective 1.8, Future Land Use (May 19, 2010). Under those categories, multiple uses are allowed, and none preclude municipal or public uses compatible with what is allowed under the current comprehensive plan. For instance, the Working Waterfront designa *24 tion permits marinas. The City could operate a marina and associated facilities, which would consist of a municipal or public use and would be fully consistent with the comprehensive plan. Similarly, the Downtown Mixed Use category includes parks, marinas, and “civic” uses. We are certain that the city could figure out uses that it could own or operate to satisfy the amendment’s criteria yet comply with the comprehensive plan. Furthermore, while the “Working Waterfront” includes industrial applications of the waterfront, including commercial fishing enterprises and boat repair, it also includes marinas and waterfront restaurants. Thus, a prohibition of one use among many in that category with respect to a particular parcel would not require a plan amendment to accomplish the intent of the charter amendment on property owned by the City itself. Because the proposed amendment does not involve or require a comprehensive plan amendment, section 163.3167 is irrelevant.
The last argument we address is made by the CRA which owns one of the properties, Spanish Court. It argues that the Charter Amendment and Ballot Summary are misleading, because the City would have to condemn Spanish Court in order to own the property. The CRA was created by the City of Riviera Beach to pursue a community redevelopment plan with respect to blighted areas in the city. In accordance with section 163.357, the city council declared its own members to be the commissioners of the CRA, although the CRA is a separate legal entity. This record does not contain the terms of the CRA and the delegation of powers by the City to the CRA. Therefore, we do not know the extent of its powers. Nevertheless, on this record we cannot conclude that the City must condemn the property owned by the CRA in order to effectuate the purposes of this amendment. Section 163.400 permits cooperation between public bodies for the purposes of carrying out community redevelopment. Those provisions would appear to provide all the authority necessary to effectuate the purpose of the charter amendment.
However, we need not decide the issue of the legal status of the property owned by the CRA, because even if this may render a portion of the amendment, as applied to Spanish Court, invalid, the trial court determined that the entire amendment was not invalid:
It is not the Court’s function to decide piece meal whether certain parts of the public measure are valid or invalid. The Court is only supposed to consider the entire public measure as a whole and the referendum retains its validity unless it is shown to be clearly, convincingly and entirely invalid. Wright v. Frankel, 965 So.2d 365 (Fla. 4th DCA 2007).
(emphasis in the final judgment). We also held in Brooks v. Watchtower Bible & Tract Society of Florida, Inc., 706 So.2d 85, 90 (Fla. 4th DCA 1998), that a referendum on an ordinance should not be prevented “unless it is demonstrated that the ordinance is unconstitutional in its entirety.” Here, the appellants have not demonstrated the invalidity of each and every provision of the amendment. Thus, the trial court was correct in not restraining the electorate’s opportunity to vote on it.
For the foregoing reasons, we affirm the final judgment of the trial court.
STEVENSON and CONNER, JJ., concur.