# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-2291

_____

JOSEPH ANDREWS, CONNIE
BENHAM, DR. JUAN P. GRAY,
LYNNE PRICE, and REV. LEVY
WILCOX,

     Appellants,

     v.

THE CITY OF JACKSONVILLE, a
consolidated political
subdivision of the State of
Florida, and MIKE HOGAN, as
Duval County Supervisor of
Elections,

     Appellees.

_____

On appeal from the Circuit Court for Duval County.
Donald R. Moran, Jr., Judge.

June 18, 2018

OSTERHAUS, J.

Appellants challenge the action of the Jacksonville City Council in putting a one-half-cent sales surtax referendum before voters in the August 2016 election. Before voters passed the underfunded pension liability surtax, a group of citizens challenged the ballot's title and summary, among other things, in

court. They made various arguments against the measure, all of which the trial court rejected. Now on appeal, Appellants ask us to declare the election null and void "for one, several, or all" of seven different reasons. We decline to do so and affirm.

## I.

On May 17, 2016, the Jacksonville City Council adopted an ordinance setting a referendum on whether to adopt a sales surtax to address the City of Jacksonville's problem of underfunded pension liability. The Council took this action in response to a state law enacted in March 2016, which authorized counties to pass ordinances allowing for the levy of a one-half-cent pension liability sales surtax. *See* ch. 2016-146, § 2, Laws of Fla.[1] The Governor approved the law on March 25, 2016, and it took effect on July 1, 2016. *See* §§ 212.055(9), 112.64(6), Fla. Stat. (2016). The Jacksonville City Council set the referendum for August 30, 2016. In late July, five weeks before the election, Appellants filed a challenge to the ordinance. The case wasn't decided before the election. And in the election, voters approved the surtax. After the election, the parties filed cross motions for summary judgment and the trial court held a hearing. Ultimately, the trial court decided the case by granting summary judgment in favor of the City.

## II.

The circuit court's order granting summary judgment involves a pure question of law that we review de novo. *Hill v. Suwannee River Water Mgmt. Dist.*, 217 So. 3d 1100, 1102 (Fla. 1st DCA 2017).

## A.

Appellants make seven arguments for reversing the trial court's judgment. The strongest of these arguments is that the ballot title and summary misled voters to the point of requiring the election to be voided. Florida law requires that whenever a public measure is submitted to a vote of the people, a ballot summary

---

[1] The governments of the City of Jacksonville and Duval County merged into one consolidated government in 1968.

must be printed in clear and unambiguous language on the ballot, which "shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure." § 101.161(1), Fla. Stat. In construing § 101.161, the "[Florida Supreme Court] has explained 'that the ballot [must] be fair and advise the voter sufficiently to enable him intelligently to cast his ballot.'" *Roberts v. Doyle*, 43 So. 3d 654, 659 (Fla. 2010) (quoting *Askew v. Firestone*, 421 So. 2d 151, 155 (Fla. 1982)). When challenged, courts will review ballot titles and summaries by asking two questions: "first, whether the ballot title and summary 'fairly inform the voter of the chief purpose of the amendment,' and second, 'whether the language of the title and summary, as written, misleads the public.'" *Roberts*, 43 So. 3d at 659 (quoting *Fla. Dep't of State v. Slough*, 992 So. 2d 142, 147 (Fla. 2008)). Ballot summaries need not explain every ramification of a proposal, but must make sure that the chief purpose is clear and unhidden. *Fla. Hometown Democracy, Inc. v. Cobb*, 953 So. 2d 666, 673 (Fla. 1st DCA 2007). Courts will invalidate a ballot title and summary if the record shows that they are "clearly and conclusively defective." *Askew*, 421 So. 2d at 154-55; *City of Riviera Beach v. Riviera Beach Citizens Task Force*, 87 So. 3d 18, 22 (Fla. 4th DCA 2012). But they will be upheld if they state the chief purpose and are not "affirmatively misleading." *Fla. Educ. Ass'n v. Fla. Dep't of State*, 48 So. 3d 694, 704 (Fla. 2010); *see also City of Riviera Beach*, 87 So. 3d at 16 (instructing that "[a] ballot title and summary cannot either 'fly under false colors' or 'hide the ball' as to the amendment's true effect"). Fair notice to voters is evaluated presuming that "the voter [will] acquaint himself with the details of a proposed ordinance on a referendum . . . If he does not, it is not the function of the ballot question to provide him with that needed education." *Miami Heat Ltd. P'ship v. Leahy*, 682 So. 2d 198, 203 (Fla. 3d DCA 1996) (quoting *Metro. Dade Cty. v. Shiver*, 365 So. 2d 210, 213 (Fla. 3d DCA 1978)).

Appellants' challenge focuses ostensibly on the summary, which they claim to be misleading on its face.[2] The ballot title and summary language read as follows:

PENSION LIABILITY 1/2-CENT SALES TAX PLAN
AUGUST 30, 2016

Permanently closing up to three of the City's underfunded defined benefit retirement plans, increasing the employee contribution for those plans to a minimum of 10%, and ending the Better Jacksonville 1/2-cent sales tax are all required to adopt a 1/2-cent sales tax solely dedicated to reducing the City's unfunded pension liability. Shall such pension liability sales tax, which ends upon elimination of the unfunded pension liability or in 30 years maximum, be adopted?

 YES _____ NO

The trial court found that the summary clearly articulated the chief purpose to "reduce or eliminate the City's unfunded pension liability through the use of a dedicated 1/2-cent sales tax to be adopted for not more than 30 years once the Better Jacksonville 1/2-cent sales tax ends."

We see no problem with this conclusion. Read at face value, the summary first declares what Florida law will require of the City if it wants to levy a surtax to address unfunded pension liabilities. Then, it asks whether the voters want to go forward with adopting such a surtax. More specifically, the summary presents to voters the primary question of whether "to adopt a 1/2-cent sales tax solely dedicated to reducing the City's unfunded pension liability." In doing so, it identifies three statutory preconditions the City must meet to move forward with such a surtax. It says that to adopt a surtax dedicated solely to reducing unfunded pension liabilities, the City must (1) permanently close up to three underfunded defined benefit retirement plans, *see* § 212.055(9)(a)1.; (2) increase the employee contribution for those

_____

[2] The parties agreed below that there were no disputed facts and neither party relied on witnesses to make their case.

4

closed plans, *see* § 212.055(9)(a)2.; and (3) end the existing Better Jacksonville half-cent sales tax, *see* § 212.055(9)(a)4-5. Each of these preconditions comports with requirements set forth in § 212.055(9), which is the statute authorizing all such sales surtaxes. *See* § 212.055, Fla. Stat. (requiring "any authorization for imposition of a discretionary sales surtax shall be published in the Florida Statutes as a subsection of this section"). By providing these preconditions, the summary comports with the "unifying principle" recognized in ballot title and summary cases of allowing voters "to comprehend the sweep" of a measure. *Fla. Educ. Ass'n*, 48 So. 3d at 701 (quoting *Smathers v. Smith*, 338 So. 2d 825, 829 (Fla. 1976)).

The second sentence of the summary follows with a question. It asks voters to decide whether "such pension liability sales tax" should be adopted. The "such" refers voters back to the description of the tax included in the first sentence: "a 1/2-cent sales tax solely dedicated to reducing the City's unfunded pension liability." The second sentence also provides timing information related to the surtax proposal. It informs voters that the tax would end "upon the elimination of the unfunded pension liability or in 30 years maximum." This timing-related fact is partly drawn from § 212.055(9)(f), which provides for the termination of pension liability sales surtaxes when a county reaches or exceeds an actuarial funding level at 100% for the plans or systems funded by the surtax, "or December 31, 2060, whichever occurs first." According to the arguments here and below, the new surtax couldn't be levied by the City until the currently levied Better Jacksonville sales tax expires, which is expected in 2030.[3] Accordingly, the new surtax could only be levied beginning on January 1, 2031, and extend only until the statutorily prescribed termination date on December 31, 2060. The facts thus validate the term provided in the summary of a "30 year maximum"; or, in the very least, convince us that the summary is not affirmatively misleading regarding its chief purpose or the timing of the surtax. *See City of Riviera Beach*, 87 So. 3d at 22.

---

[3] Regarding the new surtax's timing, we accept both parties' assurances that there are no material facts at issue.

None of Appellants' various arguments demonstrate that the ballot title and summary are clearly and conclusively defective, or affirmatively misleading. First, Appellants claim that the summary failed to state the chief purpose of the measure. But we are satisfied that the ballot summary did so by asking voters: "Shall such [a 1/2-cent sales tax solely dedicated to reducing the City's unfunded pension liability] . . . be adopted?" Along with the chief purpose, the measure also alerted voters to the sweep of the statutory preconditions the City must meet before levying the surtax. The ballot summary didn't have to contain every detail or ramification of the proposed surtax to provide its chief purpose. *Fla. Educ. Ass'n*, 48 So. 3d at 700. Indeed, it couldn't have. Florida law limits the length of ballot summaries to just 75 words. § 101.161(1), Fla. Stat.; *see also Leahy*, 682 So. 2d at 203 (recognizing that the omission of some details or ramifications of an ordinance is not the legal test).

Appellants' second objection is that the ballot summary misled voters by stating that existing underfunded retirement plans would "permanently clos[e]." Their concern is that the "permanently closing" language might have misguided voters into thinking that existing underfunded pension plans would be completely eliminated and closed altogether to current and new participants alike. In reality, adopting the surtax only required existing underfunded plans to be closed *to new hires* and not to existing plan participants. And the very next clause of the summary supplies some clarity on this point. It informs voters that if the surtax is adopted, then "those plans" will continue operating with an increased employee contribution requirement—up to a minimum 10% contribution. So the summary uses "[p]ermanently closing" in a way analogous with a situation where an investment vehicle becomes closed to new investors—the investment keeps operating for existing investors, but bars entry to new investors. *Cf., Pfeiffer v. Integrated Fund Servs., Inc.*, 371 F.Supp.2d 502, 503 (S.D.N.Y. 2005) (describing a mutual fund that was "closed to new investors" in 2003). We are satisfied here that the summary doesn't hide the ball and isn't clearly and conclusively defective.

Appellants' third objection to the ballot summary is that the voters couldn't know the meaning of the 10% contribution increase: "By not defining what it is that is being contributed or how much

is currently contributed, the voter could not determine if this potential 'increase' would have been meaningful." But, here again, we are satisfied that the 10% language did not mislead voters, or obscure the chief purpose of the measure. Irrespective of whether some underfunded plan-participants already contribute 10%, as Appellants argue, it is not affirmatively misleading to inform voters, in accordance with one of the statutory preconditions, that minimum contributions will generally increase under the measure to a fixed 10%-or-more minimum contribution for employees in these plans. *See* § 212.055(9)(a)2., Fla. Stat. (requiring plan members "to make an employee retirement contribution of at least 10 percent . . . beginning with the first pay period after the plan or system is closed").

Appellants raise other objections to the ballot title and summary, including that ending the Better Jacksonville tax wasn't the measure's chief purpose; that plan administrators weren't required to apply surtax funds toward unfunded pensions; that "City" is ambiguous; and that the summary fails to identify how surtax proceeds will be used. With these other arguments, we agree with the trial court's decision to uphold the ballot title and summary. We reject these additional arguments without discussion either on their merits, or because they weren't preserved below.

B.

One of Appellants' other main arguments against the surtax referendum involves the timing of the Jacksonville City Council's ordinance that put the referendum on the ballot. In May 2016, after the Legislature and Governor passed the law authorizing counties to adopt the surtax, *see* ch. 2016-146, § 2, Laws of Fla., the Council passed an ordinance setting the August 30th referendum. Appellants argue that the Council's action in May, which preceded the July effective date of the statute authorizing counties to levy the surtax, was beyond the Council's legal authority and rendered the referendum void ab initio. But we see no law or case supporting Appellants' argument. The new law itself didn't prescribe the date that counties could pass an ordinance setting a referendum on the surtax. Nor did the ordinance itself attempt to levy a premature surtax; it only authorized an August

vote on whether Duval County voters wished to adopt the surtax. Several preconditions still had to be met (and presumably still must be met even now) before the surtax can go into effect. The ordinance recognized the requirement to meet these preconditions, providing for future "separate legislative action" before actually levying the surtax. Ordinance 2016-300-E, § 8. It also specified that the pension liability surtax wouldn't begin until the ending of the Better Jacksonville 1/2-cent sales tax, which isn't until 2030. *Id.* at § 2. We therefore disagree with Appellants' arguments that the ordinance was unlawful and that the referendum was void from the outset.

Finally, we affirm the order below without additional discussion after having reviewed and rejected Appellants' various other arguments in support of nullifying the referendum results.

### III.

For these reasons, the trial court's order granting summary judgment for Appellees is AFFIRMED.

B.L. THOMAS, C.J., and M.K. THOMAS, J., concur.

––––––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––––––

John S. Winkler, Jacksonville, for Appellants.

Jason R. Gabriel, General Counsel, Jason R. Teal, Deputy General Counsel, and Craig D. Feiser, Assistant General Counsel, Jacksonville; Lauren V. Purdy and Simone Marstiller of Gunster, Yoakley & Stewart, P.A., Jacksonville, for Appellees.