592 So.2d 225 (1991)
ADVISORY OPINION TO THE ATTORNEY GENERAL  LIMITED POLITICAL TERMS IN CERTAIN ELECTIVE OFFICES.
No. 78647.
Supreme Court of Florida.
December 19, 1991.
Robert A. Butterworth, Atty. Gen. and Louis F. Hubener, III, Asst. Atty. Gen., Tallahassee, Michael L. Rosen and David E. Cardwell of Holland & Knight, Tallahassee, for Citizens For Ltd. Political Terms.
Cleta Deatherage Mitchell, Oklahoma City, Okl., for Term Limits Legal Institute, and Richard N. Friedman, Miami, for amicus curiae, In Support Of Proposed Amendment.
Arthur J. England, Jr., Chet Kaufman and Ross A. McVoy of Fine Jacobson Schwartz Nash Block & England, Miami, and James S. Portnoy of Arnold & Porter, Washington, D.C., for respondents: Let the People Decide  Americans For Ballot Freedom, R. Ed Blackburn, former Sheriff of Hillsborough County and former member of the Florida House of Representatives, J. Hyatt Brown, former Speaker of the Florida House of Representatives, Doyle E. Conner, former Com'r of Agriculture, *226 Louis de la Parte, former President of the Florida Senate, Raymond Ehrlich, former Chief Justice of the Florida Supreme Court, Richard W. Ervin, former Chief Justice of the Florida Supreme Court, Richard A. Pettigrew, former Speaker of the Florida House of Representatives, T. Terrell Sessums, former Speaker of the Florida House of Representatives, Parker D. Thomson, Partner, Thomson, Muraro, Bohrer & Razook, and Ralph Turlington, former Speaker of the Florida House of Representatives and former Com'r of Educ.
Jonathan B. Sallet, Donald B. Verrilli, Jr. and Scott A. Sinder of Jenner & Block, Washington, D.C., for respondents, Nat. Conference of State Legislatures and Southern Legislative Conference of The Council of State Governments.
Steven R. Ross, Gen. Counsel to the Clerk and Charles Tiefer, Deputy Gen. Counsel to the Clerk, U.S. House of Representatives, Washington, D.C., for amicus curiae, U.S. Representative Lawrence J. Smith, In Opposition to the Proposed Amendment.
GRIMES, Justice.
The Attorney General has petitioned the Court for an advisory opinion on the validity of an initiative petition providing for limited political terms for certain elective offices.[1] In response to the Attorney General's request, we issued an order permitting interested parties to file briefs and heard oral argument on the validity of the proposed amendment.
The initiative petition provides as follows:
The people of Florida believe that politicians who remain in office too long may become preoccupied with re-election and become beholden to special interests and bureaucrats, and that present limitations on the President of the United States and Governor of Florida show that term limitations can increase voter participation, citizen involvement in government, and the number of persons who will run for elective office.
Therefore, to the extent permitted by the Constitution of the United States, the people of Florida, exercising their reserved powers, hereby declare that:
1) Article VI, s. 4 of the Constitution of the State of Florida is hereby amended by a) inserting "(a)" before the first word thereof and, b) adding a new subsection "(b)" at the end thereof to read:
"(b) No person may appear on the ballot for re-election to any of the following offices:
"(1) Florida representative,
"(2) Florida senator,
"(3) Florida Lieutenant governor,
"(4) any office of the Florida cabinet,
"(5) U.S. Representative from Florida, or
"(6) U.S. Senator from Florida
"if by the end of the current term of office, the person will have served (or, but for resignation, would have served) in that office for eight consecutive years."
2) This amendment shall take effect on the date it is approved by the electorate, but no service in a term of office which commenced prior to the effective date of this amendment will be counted against the limit in the prior sentence.
3) If any portion of this measure is held invalid for any reason, the remaining portion of this measure, to the fullest extent possible, shall be severed from the void portion and given the fullest possible force and application. The people of Florida declare their intention that persons elected to offices of public trust will continue voluntarily to observe the wishes of the people as stated in this initiative in the event any provision of this initiative is held invalid.
The Attorney General has concluded that the proposed amendment meets the single-subject requirement of article XI, section 3, Florida Constitution, and the ballot title and summary requirements of section *227 101.161, Florida Statutes (1989). In addition to those issues, opponents of the proposed amendment have raised various constitutional challenges.[2] However, based on the following provisions, we find that those issues are not justiciable in the instant proceeding. The Florida Constitution provides that "[t]he attorney general shall, as directed by general law," request this Court's opinion "as to the validity of any initiative petition circulated pursuant to Section 3 of Article XI." Art. IV, § 10, Fla. Const. General law provides that the attorney general shall seek an advisory opinion "regarding the compliance of the text of the proposed amendment or revision with s. 3, Art. XI of the State Constitution and the compliance of the proposed ballot title and substance with s. 101.161." § 16.061(1), Fla. Stat. (1989). Thus, we are limited in this proceeding to addressing whether the proposed amendment and ballot title and summary comply with article XI, section 3, Florida Constitution and section 101.161, Florida Statutes (1989).[3]See Grose v. Firestone, 422 So.2d 303, 306 (Fla. 1982) (question of whether proposed amendment violated due process not justiciable in challenge to ballot summary).

SINGLE-SUBJECT REQUIREMENT
Article XI, section 3, Florida Constitution, provides, in relevant part that:
The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment shall embrace but one subject and matter directly connected therewith.

(Emphasis added.)
A proposed amendment meets this single-subject requirement if it has "a logical and natural oneness of purpose[.]" Fine v. Firestone, 448 So.2d 984, 990 (Fla. 1984). To state the test another way, a proposed amendment is valid if it "may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme." Id. (quoting City of Coral Gables v. Gray, 154 Fla. 881, 883-84, 19 So.2d 318, 320 (1944)). The single-subject requirement imposes a "functional as opposed to a locational restraint on the range of authorized amendments." Fine, 448 So.2d at 990. Its intent is to "protect against multiple precipitous changes in our state constitution." Id. at 988.
We find that the proposed amendment meets the single-subject requirement. The sole subject of the proposed amendment is limiting the number of consecutive terms that certain elected public officers may serve. Although the proposed amendment affects officeholders in three different branches of government, that fact alone is not sufficient to invalidate the proposed amendment. We have found proposed amendments to meet the single-subject requirement even though they affected multiple branches of government. For example, in Weber v. Smathers, 338 So.2d 819 (Fla. 1976), we upheld the proposed "Ethics in Government" amendment against a single-subject attack. That amendment required financial disclosure by all elected constitutional officers and candidates, provided for forfeiture of rights under the public retirement system for any public official who violated the public trust, and limited the ability of legislators and statewide elected officers to represent persons before the governmental bodies of which they were members.
We do not agree with opponents that the proposed amendment fails to identify constitutional provisions with which it conflicts or which it substantially affects. The initiative proposal is intended to amend article VI, section 4 of the state constitution, which provides that "[n]o person convicted *228 of a felony, or adjudicated in this or any other state to be mentally incompetent, shall be qualified to vote or hold office until restoration of civil rights or removal of disability." The amendment, if passed, will add term limits as a further disqualification on holding office. The proposed amendment does not change or affect the age or residency requirements of article III, section 15 (state legislators) or article IV, section 5 (lieutenant governor and cabinet members) of the Florida Constitution. Further, should the proposed amendment be approved by the voters, state senators will still be elected for four-year terms and state representatives for two-year terms as provided in article III, section 15. Cabinet members and the lieutenant governor will still serve four-year terms as provided in article IV, section 5.

BALLOT TITLE AND SUMMARY REQUIREMENTS
Section 101.161(1), Florida Statutes (1989), provides in relevant part:
Whenever a constitutional amendment ... is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot... . The substance of the amendment ... shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
The proposed ballot title and summary at issue here provide:
LIMITED POLITICAL TERMS IN CERTAIN ELECTIVE OFFICES
Limits terms by prohibiting incumbents who have held the same elective office for the preceding eight years from appearing on the ballot for re-election to that office. Offices covered are: Florida Representative and Senator, Lieutenant Governor, Florida Cabinet, and U.S. Senator and Representative. Terms of office beginning before amendment approval are not counted.
We have construed section 101.161 to require that "the ballot be fair and advise the voter sufficiently to enable him intelligently to cast his ballot." Askew v. Firestone, 421 So.2d 151, 155 (Fla. 1982) (emphasis omitted) (quoting Hill v. Milander, 72 So.2d 796, 798 (Fla. 1954)). The ballot title and summary must state "in clear and unambiguous language the chief purpose of the measure." Askew v. Firestone, 421 So.2d at 155. However, it need not explain every detail or ramification of the proposed amendment. Carroll v. Firestone, 497 So.2d 1204, 1206 (Fla. 1986); Grose v. Firestone, 422 So.2d at 305; Miami Dolphins Ltd. v. Metropolitan Dade County, 394 So.2d 981, 987 (Fla. 1981).
The chief purpose of the proposed amendment is to limit the terms of incumbents in certain elective offices. The proposal seeks to achieve this, as the ballot summary indicates, by prohibiting an incumbent who has held the office for the preceding eight years from appearing on the ballot for reelection. The language of the summary and ballot title are clear and unambiguous. The summary identifies the offices affected.
Opponents of the proposed amendment argue that the ballot summary is invalid because it does not advise voters that there are presently no limits on the terms of the affected offices and does not reveal that the proposed amendment contains a severability clause. A ballot summary may be defective if it omits material facts necessary to make the summary not misleading. See Askew v. Firestone, 421 So.2d at 158 (Ehrlich, J., concurring). However, we do not find the failure to indicate the current lack of term limits to be misleading. This is not a situation in which the ballot summary conceals a conflict with an existing provision. There is no existing constitutional provision imposing a different limitation on terms of office. In effect, this proposed amendment writes on a clean slate. Furthermore, we do not find the lack of reference to the severability provision to be misleading. We have *229 approved other ballot summaries that did not refer to severability provisions in the proposed amendments. See In re Advisory Opinion to the Attorney General  Homestead Valuation Limitation, 581 So.2d 586 (Fla. 1991); In re Advisory Opinion to the Attorney General, Limitation of Non-Economic Damages in Civil Actions, 520 So.2d 284 (Fla. 1988).
Accordingly, we hold that the initiative petition and proposed ballot summary meet the requirements of article XI, section 3 of the Florida Constitution, and section 101.161, Florida Statutes (1989). This opinion should not be construed as favoring or opposing the passage of this proposed amendment.
It is so ordered.
SHAW, C.J. and McDONALD, BARKETT and HARDING, JJ., concur.
OVERTON, J., concurs in part and dissents in part with an opinion, in which KOGAN, J., concurs.
KOGAN, J., concurs in part and dissents in part with an opinion.
OVERTON, Justice, concurring in part and dissenting in part.
My disagreement with the majority opinion is with its failure to address the question of whether the limitation of terms for United States Representatives and United States Senators is in violation of article I, sections 2 and 3, of the Constitution of the United States.
Contrary to the majority, I find that we are mandated by the Florida Constitution, specifically, article IV, section 10, to consider the validity of an initiative petition that is presented to the voters under article XI, section 3. Article IV, section 10, of the Florida Constitution, states that we should consider "the validity of any initiative petition circulated pursuant to Section 3 of Article XI." Granted, we must consider whether the proposed amendment and the ballot title and summary comply with article XI, section 3, of the Florida Constitution, and section 101.161, Florida Statutes (1989). However, I find that those provisions do not limit our responsibility in considering whether or not the proposed amendment to this constitution meets constitutional requirements of validity under the Constitution of the United States. A reasonable interpretation of article III, section 10, requires a construction that mandates our consideration of this question, particularly in view of the prior case law of this Court.
This Court has previously recognized that we have the responsibility to consider a facial violation of the Constitution of the United States in proposed amendments to our constitution. In Gray v. Winthrop, 115 Fla. 721, 156 So. 270 (1934), and Gray v. Moss, 115 Fla. 701, 156 So. 262 (1934), we considered violations of the United States Constitution before allowing a proposed amendment to our state constitution to be placed on the ballot. In doing so, we stated:
If a proposed amendment to the state Constitution by its terms specifically and necessarily violates a command or limitation of the Federal Constitution, a ministerial duty of an administrative officer, that is a part of the prescribed legal procedure for submitting such proposed amendment to the electorate of the state for adoption or rejection, may be enjoined at the suit of proper parties in order to avoid the expense of submission, when the amendment, if adopted, would palpably violate the paramount law and would inevitably be futile and nugatory and incapable of being made operative under any conditions or circumstances.
Winthrop, 115 Fla. at 726-27, 156 So. at 272. Subsequent to our adoption of the 1968 Constitution, we again acknowledged that responsibility in Weber v. Smathers, 338 So.2d 819, 821 (Fla. 1976), stating that the citizens of Florida "have a right to change, abrogate or modify [the Florida Constitution] in any manner they see fit so long as they keep within the confines of the Federal Constitution." To accept the construction of the majority means that we should wait until after the election to address a strictly legal issue. A review at this time, should this legal issue be resolved adverse to the proponents of the *230 amendment, would save both proponents and opponents of the amendment considerable expense and the considerable expense to the state of a futile election. To allow the people to vote and then, if adopted, hold the provision unconstitutional on its face perpetuates a fraud on the voting public. I find that both our constitution and case law recognizes our authority to resolve this strictly legal issue now, without further court proceedings. The Washington Supreme Court's decision in League of Women Voters v. Munroe, No. 58438-9 (Wash. Aug. 30, 1991), is not persuasive. The Washington Supreme Court refused to address the question because the issues were complex and the court would have to decide the case without adequate time for briefing, argument, and deliberation. I note that the Washington Supreme Court was under considerably greater time constraints than we are in this case. It was forced to make a decision approximately sixty days before the election. We, on the other hand, have this matter before us a year before the election.
The question is a straight legal question and I find that the public is entitled to know the answer before members of the public, as well as public entities, expend funds and energy to have an election on a proposal that may be unconstitutional. Deciding it now would further judicial economy. If this Court believes that additional briefing and argument are necessary, then that should be done. We should address and decide the question, not put it off.
The question of the limitation of terms for federal officials is a significant one and, although it has not directly addressed this question, the United States Supreme Court has, in related cases, indicated that this type of limitation on a candidate for the United States Senate or the House of Representatives is unconstitutional.
This state has already been told that it cannot put any limitations on candidates for federal offices. In Stack v. Adams, 315 F. Supp. 1295 (N.D.Fla. 1970), the United States District Court enjoined the State of Florida from holding an election for the United States House of Representatives because a Florida statute had disqualified incumbent state officeholders from running for federal offices. That court found that our resign-to-run statute conflicted with the qualification clause of the federal constitution. We, in State ex rel. Davis v. Adams, 238 So.2d 415 (Fla. 1970), disagreed with the United States District Court, believing that the State of Florida could impose that type of restriction on its state officeholders. Recognizing the dispute between the United States District Court decision and our decision, we agreed, consistent with the United States District Court's decision in Stack, to temporarily stay another congressional election and expressed our concerns for comity, equity, and fairness. Justice Black, in considering that stay, agreed with the United States District Court and found, in Davis v. Adams, 400 U.S. 1203, 91 S.Ct. 1, 27 L.Ed.2d 20 (1970), that Florida's resign-to-run statute violated the federal constitution and that, under those circumstances, the election should not be held until all the parties were given an opportunity to qualify and run for that federal office.
Next, the United States Supreme Court explained in Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), that the qualification provisions set forth in article I, sections 2 and 3, of the United States Constitution[4] are exclusive and cannot be expanded without amending the United States Constitution. In Powell, *231 a congressman, Adam Clayton Powell, had been elected to represent New York in the United States Congress. The House of Representatives refused to seat him because a congressional investigation in the previous term concluded that Powell had misrepresented travel expenses and may have made illegal salary payments to his wife. The United States Supreme Court directed that Powell be seated. In doing so, the Court concluded that "the Constitution leaves the [Congress] without authority to exclude any person, duly elected by his constituents, who meets all the requirements for membership expressly prescribed in the Constitution." 395 U.S. at 522, 89 S.Ct. at 1964 (footnote omitted). Just as Congress had no authority to exclude a person who has "all the requirements for membership expressly prescribed in the Constitution," the State of Florida, through its Constitution, also lacks the authority to exclude a person by placing an additional qualification on his or her ability to seek that office.
I find that the qualifications provisions in the Constitution of the United States are exclusive and cannot be expanded. To hold otherwise would allow the United States Senate and the United States House of Representatives to be composed of persons with differing qualifications, and states with a limitation on the terms might find their representation in these two bodies unequal because of the seniority system that operates under those legislative bodies' rules.
The issue of severability of the congressional officeholders from the state officeholders, although mentioned in some of the briefs, has not been fully addressed and, consequently, should be addressed in supplemental briefs. Preliminarily at least, I would find that this Court has no authority to sever the provisions in this petition, and, accordingly, I would conclude that the proposed initiative petition must be declared invalid. I should note that, if the initiative petition applied only to state officeholders, I would agree that it would be a valid initiative petition and would not violate single subject principles for the reasons expressed by the majority.
KOGAN, J., concurs.
KOGAN, Justice, concurring in part, dissenting in part.
The single-subject requirement contained in article XI, section 3 of the Florida Constitution states that
any ... revision or amendment shall embrace but one subject and matter directly connected therewith.
Art. XI, § 3, Fla. Const. As the majority correctly notes, we traditionally have stated that this constitutional provision requires an initiative to contain a logical and natural "oneness of purpose." E.g., Fine v. Firestone, 448 So.2d 984 (Fla. 1984). However, the erratic nature of our own case law construing article XI, section 3 shows just how vague and malleable this "oneness" standard is. What may be "oneness" to one person might seem a crazy quilt of disparate topics to another. "Oneness," like beauty, is in the eye of the beholder; and our conception of "oneness" thus has changed every time new members have come onto this Court.
I think the only proper way to resolve this issue is by looking to the fundamental policies underlying article XI, section 3. Why was the single-subject clause put into this provision?
The obvious and unmistakable purpose underlying article XI, section 3 is to reserve to the voters the prerogative to separately decide discrete issues. Therefore, one way of deciding the question before us today is to determine whether the proposed initiative contains more than one separate issue about which voters might differ.[5] In other words, is there at least one discrete, *232 severable portion of the ballot language that reasonable voters[6] might reject if given the choice, even while accepting the remainder of the ballot language? If the answer is yes, then this Court must find that the initiative contains more than one subject and lacks "oneness." Accord Evans v. Firestone, 457 So.2d 1351, 1354 (Fla. 1984).
The policy underlying this requirement is self-evident. Where reasonable voters may differ, then the voters should not be placed in the position of accepting an all-or-nothing grab-bag initiative. Each discrete issue should be placed separately on the ballot so that voters can exercise their franchise in a meaningful way. No person should be required to vote for something repugnant simply because it is attached to something desirable. Nor should any interest group be given the power to "sweeten the pot" by obscuring a divisive issue behind separate matters about which there is widespread agreement. Accord Evans v. Firestone.
I believe the present initiative clearly and unmistakably violates these principles, rendering it conclusively defective. Here, the voters of Florida are being asked to approve or disapprove an initiative designed to limit the terms of persons who hold public office at many different levels of government. Under the proposed ballot language, the voter can only decide to limit all, or limit none. Those voters who might desire, for example, to limit the terms of state legislators but not members of Congress have no meaningful way to make this choice, even though there are many valid reasons for taking such a position.
For example, voters might decide that the advantages outweigh the disadvantages on the question of term limitations for state legislators. This is because the delegations from all portions of the state will be treated equally in the statehouse. No geographical region would suffer any disadvantage with respect to any other region. The rules of the political game in Tallahassee would be the same for everyone.
However, a substantial number of reasonable voters might decide that a similar limitation on the congressional delegation should be rejected because it would weaken Florida's effectiveness in Congress. This could occur, for example, if other states refuse to follow Florida's lead in limiting the terms of their congressional delegations. Because of the seniority requirements needed to obtain key committee appointments and chairmanships in Congress, Florida thus could be placed at a gross disadvantage with respect to other states. In effect, Florida would relegate its delegation to a perpetual "junior" status that could deprive Florida of the clout other states would be able to obtain simply by climbing the seniority ladder.
These are valid differences of opinion that reasonable voters would entertain. I believe my conclusions are especially compelling in light of the fact that Washington state voters recently rejected a similar term-limitation proposal in part because it would have caused the state to lose the substantial clout it now enjoys in Congress. As everyone knows, the present Speaker of the House of Representatives is from Washington state, and the state has other senior congressional delegates whose political strength provides Washington state with a significant advantage, even over some more populous states.
Finally, I agree with the majority's holding regarding the ballot summary and title. However, I do have some reservations about this particular summary. The voters would have been far better served if the summary explained both the current state of affairs and the changes proposed. I concur with the result reached by the majority on this question primarily because I believe it is reasonable to conclude that most voters know or can infer from the ballot language what the present state of affairs is. Were this not true, I would not concur with the majority on this question.
*233 For the foregoing reasons, I would hold that the proposed ballot language violates the single-subject requirement and cannot be placed on the ballot in its present form.
NOTES
[1] We have jurisdiction pursuant to article IV, section 10, Florida Constitution, and section 16.061, Florida Statutes (1989).
[2] Opponents argue that the proposed amendment unconstitutionally restricts First Amendment rights and that the limitation on the terms of federal legislators violates the Supremacy Clause of the United States Constitution.
[3] Although section 16.061(1), Florida Statutes (1989), provides that the petition for an advisory opinion "may enumerate any specific factual issues which the Attorney General believes would require a judicial determination[]," the constitutional issues raised by the initiative's opponents are legal rather than factual issues.
[4] The qualifications provisions contained in article I, sections 2 and 3, of the United States Constitution, read as follows:

SECTION 2... .
No person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen.
... .
SECTION 3... .
... .
No Person shall be a Senator who shall not have attained to the Age of thirty Years, and been nine Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State for which he shall be chosen.
[5] I do not suggest that an initiative contains multiple subjects if reasonable voters might disagree with some integral component by which the initiative achieves its purposes. Rather, such disagreement must be about matters that, if severed, would leave at least two complete and workable proposals. If so, the component is discrete and not integral. If the disagreement is about a matter that cannot be severed without rendering the remainder absurd, then the initiative must stand or fall as a unit when put to the voters.
[6] Obviously, the role of this Court is not to determine how the vote will go, but merely whether at least one reasonable and legitimate controversy might exist that voters should decide separately from the rest.