# Supreme Court of Florida

_____

No. SC19-2116
_____

**ADVISORY OPINION TO THE ATTORNEY GENERAL RE: ADULT USE OF MARIJUANA.**

April 22, 2021
**<u>CORRECTED OPINION</u>**

PER CURIAM.

The Attorney General of Florida has requested this Court's opinion concerning the validity of an initiative petition circulated pursuant to article XI, section 3 of the Florida Constitution.  We have jurisdiction.  *See* art. IV, § 10, art. V, § 3(b)(10), Fla. Const.  As explained below, we strike the proposed amendment on the ground that the ballot summary is affirmatively misleading.

## BACKGROUND

On December 19, 2019, the Attorney General petitioned this Court for an advisory opinion regarding the validity of an initiative petition sponsored by Make it Legal Florida (the Sponsor) and titled

"Adult Use of Marijuana." The Attorney General asks whether the proposed amendment complies with the single-subject requirement of article XI, section 3 of the Florida Constitution, and whether the ballot title and summary comply with the clarity requirements of section 101.161(1), Florida Statutes (2020). After we directed interested proponents and opponents to file briefs, the Attorney General submitted a brief opposing the initiative petition. Opposing briefs were also submitted by: (1) the Florida Senate; (2) the Florida House of Representatives; (3) the Drug Free America Foundation, the Florida Coalition Alliance, National Families in Action, and Smart Approaches to Marijuana; and (4) the Florida Chamber of Commerce, Floridians Against Recreational Marijuana, Save Our Society from Drugs, and the National Drug-Free Workplace Alliance. The Sponsor filed the lone brief in support of the initiative petition. Oral argument was held on May 6, 2020.

**Text of the Proposed Amendment**

The proposed amendment would add the following new section 33 to article X of the Florida Constitution:

Section 33. Adult Use of Marijuana.
**(a) Definitions.** As pertaining to this section
(1) "Adult" means a person 21 years of age or older.

(2) "Department" means the Florida Department of Health or its successor agency.

(3) "Marijuana" shall have the same meaning as defined in Article X, Section 29.

(4) "Marijuana accessories" means any equipment, products, or materials of any kind which are for ingesting, inhaling, topically applying, or otherwise introducing marijuana into the human body.

(5) "Medical Marijuana Treatment Center" shall have the same meaning as defined in Article X, Section 29, except a licensed Medical Marijuana Treatment Center is permitted to sell, distribute, or dispense marijuana to a person 21 years of age or older for personal use for any reason in compliance with this section.

(6) "Public place" means any public street, sidewalk, park, beach, or other public commons.

**(b) Public policy.**

(1) An adult is permitted to possess, use, display, purchase, or transport marijuana or marijuana accessories for personal use for any reason in compliance with this section and Department regulations and is not subject to criminal or civil liability or sanctions under Florida law.

(2) A Medical Marijuana Treatment Center is permitted to sell, distribute or dispense marijuana or marijuana accessories to an adult for personal use for any reason in compliance with this section and Department regulations and is not subject to criminal or civil liability or sanctions under Florida law.

**(c) Restrictions.**

(1) An adult may possess, display, purchase, or transport up to two and a half ounces of marijuana for personal use for any reason.

(2) A Medical Marijuana Treatment Center that sells, distributes, or dispenses marijuana or marijuana accessories to an adult shall ensure any marijuana or marijuana accessories are clearly labeled and in childproof packaging.

(3)  Marijuana or marijuana accessories shall not be advertised or marketed to target persons under the age of 21.

(4)  Marijuana authorized by this section may not be used in any public place.

(5)  The limitations set forth in Article X, Section 29(c)(4), (5), (6), and (8) shall apply to personal use of marijuana authorized by this section.

**(d)  Authority.**

(1)  The Department shall issue reasonable regulations necessary for the implementation and enforcement of this section.

(2)  Nothing in this section shall limit the legislature from enacting laws consistent with this section.

**(e)  Severability.**  The provisions of this section are severable and if any clause, sentence, paragraph, or section of this measure, or an application thereof, is adjudged invalid by a court of competent jurisdiction, other provisions shall continue to be in effect to the fullest extent possible.

## Ballot Title and Summary

The ballot title for the proposed amendment is: "Adult Use of Marijuana."  The ballot summary states:

Permits adults 21 years or older to possess, use, purchase, display, and transport up to 2.5 ounces of marijuana and marijuana accessories for personal use for any reason.  Permits Medical Marijuana Treatment Centers to sell, distribute, or dispense marijuana and marijuana accessories if clearly labeled and in childproof packaging to adults.  Prohibits advertising or marketing targeted to persons under 21.  Prohibits marijuana use in defined public places.  Maintains limitations on marijuana use in defined circumstances.

**ANALYSIS**

**Standard of Review**

In reviewing the validity of an initiative petition, "[t]his Court has traditionally applied a deferential standard of review." *Advisory Op. to Att'y Gen. re Use of Marijuana for Certain Med. Conditions*, 132 So. 3d 786, 794 (Fla. 2014) (*Medical Marijuana I*). Prior to the enactment of chapter 2020-15, Laws of Florida, this Court repeatedly recognized that our inquiry is limited "to two issues: (1) whether the amendment itself satisfies the single-subject requirement of article XI, section 3, Florida Constitution; and (2) whether the ballot title and summary satisfy the clarity requirements of section 101.161, Florida Statutes." *Advisory Op. to Att'y Gen. re Water & Land Conservation--Dedicates Funds to Acquire & Restore Fla. Conservation & Recreation Lands*, 123 So. 3d 47, 50 (Fla. 2013). "In order for the Court to invalidate a proposed amendment, the record must show that the proposal is clearly and conclusively defective on either ground." *Advisory Op. to Att'y Gen. re Amendment to Bar Gov't from Treating People Differently Based on Race in Pub. Educ.*, 778 So. 2d 888, 891 (Fla. 2000).

We conclude that the initiative petition is "clearly and conclusively defective," *id.*, on the ground that the ballot summary fails to comply with section 101.161.[1]

## Section 101.161

Section 101.161(1), Florida Statutes (2020), provides that "[t]he ballot summary of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure."  The statute further requires that the ballot title "consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of."  The purpose of these statutory requirements is "to ensure that the ballot summary and title 'provide fair notice of the content of the proposed amendment' to voters so that they 'will not be misled as to [the proposed amendment's] purpose, and can cast

---

1.  Because of our invalidation of the initiative on this ground, we need not address arguments presented concerning the scope and application of chapter 2020-15, Laws of Florida, which among other things amends existing statutes to (1) heighten the signature requirements before an initiative petition is eligible for this Court's review, and (2) expand the scope of this Court's review to include whether an initiative petition is facially invalid under the United States Constitution.  Ch. 2020-15, §§ 1-2, Laws of Fla.

an intelligent and informed ballot.'" *Advisory Op. to Att'y Gen. re Voter Control of Gambling*, 215 So. 3d 1209, 1215 (Fla. 2017) (alteration in original) (quoting *Advisory Op. to Att'y Gen. re Right of Citizens to Choose Health Care Providers*, 705 So. 2d 563, 566 (Fla. 1998)).

In determining whether a ballot title and summary comply with section 101.161, this Court "consider[s] two questions: (1) whether the ballot title and summary, in clear and unambiguous language, fairly inform the voters of the chief purpose of the amendment; and (2) whether the language of the ballot title and summary, as written, will be affirmatively misleading to voters." *Medical Marijuana I*, 132 So. 3d at 797. "[A]n accurate, objective, and neutral summary of the proposed amendment is the *sine qua non* of the citizen-driven process of amending our constitution." *Advisory Op. to Att'y Gen. re Indep. Nonpartisan Comm'n to Apportion Legislative & Cong. Districts Which Replaces Apportionment by Legislature*, 926 So. 2d 1218, 1227 (Fla. 2006) (quoting *Advisory Op. to Att'y Gen. re Additional Homestead Tax Exemption*, 880 So. 2d 646, 653-54 (Fla. 2004)).

Here, the opponents of the proposed amendment offer various arguments for why the ballot summary is defective.  Their primary argument—the only one we address—focuses on the first clause of the summary: "Permits adults 21 years or older to possess, use, purchase, display, and transport up to 2.5 ounces of marijuana and marijuana accessories for personal use for any reason."  They note that the proposed amendment itself states that it would only remove criminal and civil liability for the identified conduct "under Florida law."  They thus argue that the summary's unqualified use of the word "[p]ermits" affirmatively misleads voters into believing that the recreational use of marijuana in Florida will be free of any repercussions, criminal or otherwise.  We agree.

## "Permits" Marijuana Use

There is no dispute here that the activities contemplated by the proposed amendment are criminal offenses under federal law. *See* 21 U.S.C. §§ 801-904 (the federal Controlled Substances Act). There is also no dispute that the proposed amendment states that the contemplated activities will only be free of "criminal or civil liability or sanctions under Florida law."  And there is further no dispute that the ballot summary unqualifiedly informs voters that

- 8 -

the amendment "[p]ermits" the contemplated activities.  Although this Court once stated that it has "never required that a ballot summary inform voters as to the current state of federal law and the impact of a proposed state constitutional amendment on federal statutory law as it exists at this moment in time," *Medical Marijuana I*, 132 So. 3d at 808, we have certainly never concluded— or suggested—that a summary may affirmatively "mislead voters regarding the interplay between the proposed amendment and federal law," *id.*  The summary here does precisely that.

The summary's unqualified use of the word "[p]ermits" strongly suggests that the conduct to be authorized by the amendment will be free of any criminal or civil penalty in Florida. *See The American Heritage Dictionary* 1315 (5th ed. 2011) (defining the verb "permit" as "[t]o grant consent or leave to (someone); authorize"; and as "[t]o allow the doing of (something); consent to"). The proposed amendment, on the other hand, explains that the conduct will only be free of criminal or civil liability "under Florida law."  The proposed amendment includes that language, of course, because a recreational marijuana user or distributor will remain exposed to potential prosecution under federal law—no small

matter. A constitutional amendment cannot unequivocally "permit" or authorize conduct that is criminalized under federal law. And a ballot summary suggesting otherwise is affirmatively misleading.

To put our decision into context, we review the two previous times marijuana-related initiative petitions came before this Court. Both times this Court approved the proposed amendment for placement on the ballot, the first time by way of a 4-3 decision and the second time unanimously. Here, the Sponsor—for whatever reason—took a far more problematic approach to the ballot summary than did the sponsors in the two earlier cases.

In *Medical Marijuana I*, this Court reviewed the validity of an initiative petition that sought to allow the use of medical marijuana for patients with certain medical conditions. 132 So. 3d at 791. The text of the proposed amendment stated that "[t]he medical use of marijuana . . . is not subject to criminal or civil liability or sanctions under Florida law except as provided in this section." *Id.* It further provided that "[n]othing in this law section [sic] requires the violation of federal law or purports to give immunity under federal law." *Id.* at 793. The ballot summary then explained that the amendment "[a]llow[ed] the medical use of marijuana for

- 10 -

individuals with debilitating diseases" but "[a]pplie[d] only to Florida law." *Id.* at 794. The ballot summary additionally disclosed that the amendment "[did] not authorize violations of federal law." *Id.* Opponents of the initiative petition argued in relevant part that the ballot summary was defective for "mislead[ing] voters regarding the interplay between the proposed amendment and federal law." *Id.* at 808. And they argued "that the ballot summary should include language informing the voters that marijuana possession and use is currently prohibited under federal law." *Id.* This Court's majority disagreed. *Id.* In rejecting the opponents' arguments—as well as arguments advanced by two of the three dissenting justices that the summary affirmatively misled the voters regarding federal law—the majority concluded that "the statements in the ballot summary [were] substantially similar in meaning to the proposed amendment's text" and that the opponents were improperly "asserting that the ballot summary should include language that [was] not in the proposed amendment itself." *Id.* The majority also noted that this Court had "never required that a ballot summary inform voters as to the current state of federal law and the impact of a proposed state constitutional amendment on federal statutory law

- 11 -

as it exists at this moment in time," *id.*, while concluding that "the ballot summary's discussion of federal law [was] not 'so misleading as to clearly and conclusively violate section 101.161,' " *id.* (quoting *Advisory Op. to Att'y Gen. re Standards for Establishing Legislative District Boundaries*, 2 So. 3d 175, 187 (Fla. 2009)).

The proposed amendment in *Medical Marijuana I* was ultimately not adopted by the voters. The following year, a similar initiative petition qualified for this Court's review. *See Advisory Op. to Att'y Gen. re Use of Marijuana for Debilitating Med. Conditions*, 181 So. 3d 471 (Fla. 2015) (*Medical Marijuana II*). There, the text of the proposed amendment provided—as in *Medical Marijuana I*—that the medical use of marijuana under certain circumstances would "not [be] subject to criminal or civil liability or sanctions under Florida law." *Id.* at 473. It further provided—as in *Medical Marijuana I*—that "[n]othing in this section requires the violation of federal law or purports to give immunity under federal law." *Id.* at 475. The ballot summary then provided—as in *Medical Marijuana I*—that the amendment "[a]pplie[d] only to Florida law." *Id.* at 476. But the ballot summary further provided—in clearer language than in *Medical Marijuana I*—that the amendment "[did] not immunize

- 12 -

violations of federal law." *Id.* This Court *unanimously* approved the initiative petition for placement on the ballot, *id.* at 479, concluding that among other things "the ballot title and summary fairly inform[ed] voters of the purpose of the proposed amendment—the state authorization of medical marijuana for patients with debilitating medical conditions," *id.* at 478. The amendment was ultimately approved by the voters and added article X, section 29 to the Florida Constitution.

Here, instead of following the roadmap this Court unanimously approved in *Medical Marijuana II*, the Sponsor chose a path that diverges even from the majority's reasoning in *Medical Marijuana I.* That is, although the text of the proposed amendment states it would only remove criminal and civil sanctions for the identified conduct "under Florida law," the ballot summary omits this limiting language and affirmatively misleads voters by suggesting that the identified conduct will be "[p]ermit[ted]" without qualification. This we cannot approve.[2]

---

2. The dissenting opinion discusses reliance interests and yet does not address our discussion of *Medical Marijuana I* and *Medical Marijuana II*. Again, in both cases, the sponsor handled a nearly identical issue as presented here by unsurprisingly addressing that

- 13 -

The Sponsor offers various reasons why we should reject striking the proposed amendment on this ground. We are not persuaded by any of these arguments. Indeed, the arguments largely sidestep the relevant issue.

First, the Sponsor relies on *Advisory Opinion to Attorney General—Limited Political Terms in Certain Elective Offices*, 592 So. 2d 225 (Fla. 1991). There, we reviewed an initiative petition that purported to impose term limits on certain elective offices, including federal legislators from Florida. *Id.* at 226. Opponents of the measure argued "that the limitation on the terms of federal legislators violate[d] the Supremacy Clause of the United States Constitution." *Id.* at 227 n.2. This Court declined to consider that constitutional challenge, reasoning that its review of the initiative petition was "limited . . . to addressing whether the proposed

_____

important issue both in the proposed amendment itself and in the ballot summary. And both times this Court approved the petition. Given this "precedent," dissenting op. at 27, we submit that it is the dissenting opinion's atmospheric-science analogy—and not our decision here—that is unsound. That is, rather than analogizing this case to a professor failing a student who followed "the test instructions," dissenting op. at 22, the better analogy would be to a professor failing a student who chose an incorrect answer after twice being shown the correct answer.

- 14 -

amendment and ballot title and summary compl[ied] with article XI, section 3, Florida Constitution and section 101.161, Florida Statutes." *Id.* at 227. Because those constitutional and statutory requirements had been satisfied, this Court approved the proposed amendment for placement on the ballot. *Id.* at 229.

The Sponsor argues that *Limited Political Terms* makes clear "that a conflict between current federal law and a proposed amendment is not justiciable" in the context of this Court's review of an initiative petition. According to the Sponsor, "the ballot summary's silence regarding federal law is therefore irrelevant." But that reasoning is lacking. The issue here, of course, is not whether the proposed amendment is unconstitutional as inconsistent with federal law. Rather, the issue is whether the ballot summary affirmatively misrepresents that inconsistency. It does. *Limited Political Terms* has no relevance here.

The Sponsor next looks to the majority's statement in *Medical Marijuana I* that this Court had "never required that a ballot summary inform voters as to the current state of federal law and the impact of a proposed state constitutional amendment on federal statutory law as it exists at this moment in time." *Medical*

*Marijuana I*, 132 So. 3d at 808. The Sponsor opines that even the dissenting justices in that case agreed there was no such requirement and that the issue dividing the Court was the perceived accuracy of the summary's representation of the amendment's relationship to federal law. The Sponsor contends that because the summary here is silent as to the amendment's effect on federal law, there is no possibility voters could be left with the mistaken belief that the amendment is consistent with federal law. According to the Sponsor, the opponents' arguments amount to nothing more than incorrect assertions that the summary is required to describe the amendment's relationship to federal law or include information that is not contained within the amendment.

The Sponsor's reliance on *Medical Marijuana I* similarly misses the point. The narrow issue is not whether the ballot summary is defective for failing to explain that marijuana use is currently prohibited by the Controlled Substances Act. Rather, the issue is whether the summary's unqualified language is affirmatively

misleading. Again, it is.[3] Because the summary affirmatively conceals the possibility that an individual could be prosecuted for conduct that the amendment purports to "[p]ermit[]" or authorize, the summary is "clearly and conclusively defective." *Race in Pub. Educ.*, 778 So. 2d at 891. Moreover, the opponents here are not arguing that "the ballot summary should include language that is not in the proposed amendment itself." *Medical Marijuana I*, 132 So. 3d at 808. Quite the opposite. Here, the ballot summary omits important language that *is* found "in the proposed amendment itself." *Id.* And the ballot summary does so even though—not surprisingly—similarly important language was included in the ballot summaries in both previous medical marijuana cases. *See Medical Marijuana II*, 181 So. 3d at 476 (ballot summary stated that the amendment "[a]pplie[d] only to Florida law" and "[did] not immunize violations of federal law"); *Medical Marijuana I*, 132 So. 3d at 794 (ballot summary stated that the amendment "[a]pplie[d] only to Florida law" and "[did] not authorize violations of federal law").

---

3. The dissenting opinion similarly misses the point by wrongly asserting that we "condemn[] . . . this summary for not explaining federal law." Dissenting op. at 34.

The Sponsor next reasons that because "[t]his Court presumes . . . the average voter has a certain amount of common understanding and knowledge," *Fla. Educ. Ass'n v. Fla. Dep't of State*, 48 So. 3d 694, 701 (Fla. 2010), there is no need for the ballot summary to state that the amendment affects only Florida law. The Sponsor continues that it is an elementary principle of civics that federal law cannot be changed through a state constitution. We reject this line of reasoning. The taint of an affirmatively misleading statement in a ballot summary is not removed simply because some voters will wisely question the accuracy of the statement. The point is that a summary should not contain language that is affirmatively misleading and creates a risk that voters will be confused.

The Sponsor lastly argues that it is unnecessary to inform voters that the amendment would only apply to Florida law because "[t]his will be the third petition initiative in six years to address the possession and use of marijuana" in Florida. The Sponsor thus contends that voters should be presumed to be knowledgeable about prohibitions on marijuana, "especially when they have voted on similar amendments in two out of the last three elections cycles." But even assuming this is a proper consideration in our review, the

Sponsor's logic is self-defeating. Among other things, the Sponsor overlooks that the ballot summaries in the two previous cases each made voters aware of the inconsistency between Florida law and federal law. *See Medical Marijuana II*, 181 So. 3d at 476; *Medical Marijuana I*, 132 So. 3d at 794. The fact that the summary here now makes no mention of that inconsistency could easily suggest to voters—misleadingly, to be sure—that there have been intervening changes to federal law since *Medical Marijuana II*. The Sponsor's argument is without merit.

## CONCLUSION

We conclude that the language in the ballot summary indicating that the proposed amendment unqualifiedly "[p]ermits" the use (and distribution) of recreational marijuana is affirmatively misleading. Because the proposed amendment fails to comply with section 101.161(1), Florida Statutes, we strike the proposed amendment.

It is so ordered.

CANADY, C.J., and POLSTON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.
LABARGA, J., dissents.
LAWSON, J., dissents with an opinion.

- 19 -

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LAWSON, J., dissenting.

The majority views the ballot summary for this proposed constitutional amendment as misleading even though it accurately summarizes changes to the Florida Constitution that would result upon passage of the amendment. They assert that the summary misleads when it states that the amendment would generally "permit" the adult use of marijuana—which is accurate and not misleading as to the change in Florida law that would be brought about by passage of the amendment, but which would be misleading to any voter who thought that his or her vote could change federal statutory law or, more specifically, 21 U.S.C. §§ 801-904 (the federal Controlled Substances Act) "[pursuant to which] the activities contemplated by the proposed amendment are [currently] criminal offenses under federal law." Majority op. at 8. Because the majority's reasoning and conclusion are logically irreconcilable with this Court's precedent, I respectfully dissent. I would follow our precedent and approve the proposed amendment for placement on the ballot.

- 20 -

## I.   Summary of Core Analysis

Our precedent correctly states that a ballot summary must simply and accurately summarize the change in Florida law that would occur if a proposed amendment is adopted.  This implies— and we have expressly held—that the summary need not address secondary issues or ramifications, including federal law.  *See Advisory Opinion to Atty. Gen. re Use of Marijuana for Certain Med. Conditions* (*Medical Marijuana I*), 132 So. 3d 786, 808 (Fla. 2014) ("This Court has . . . never required that a ballot summary inform voters as to the current state of federal law [or] the impact of a proposed state constitutional amendment on federal statutory law . . . .").

The fallacy in the majority's conclusion that this summary misleads as to federal law when accurately explaining the Florida law change proposed in the amendment is most easily illustrated by analogy.  If, for example, you and I were instructed on a one-question final exam to summarize the predominant compounds present in the earth's atmosphere and answered that the earth's atmosphere is predominantly comprised of nitrogen (approximately 78%) and oxygen (approximately 21%), our summary should be

viewed as correct because the rest of the gases combined account for only about 1% of the earth's atmosphere. *UCAR Center for Science Education,* https://scied.ucar.edu/shortcontent/earths-atmosphere (last visited Apr. 15, 2021). We would be quite upset, and rightfully so, if we were told by our professor that we had failed the exam because our answer was misleading in that it did not explain that the sun's atmosphere is different.[4] Our justifiable confusion would be even more profound if the test instructions had plainly stated that our summary need not list predominant compounds in the sun's atmosphere and need not explain differences between the earth's atmosphere and the sun's.

There is no logical difference between my hypothetical professor's illogical explanation for an unjustifiable failing grade and the majority's explanation for "strik[ing] the proposed amendment on the ground that the ballot summary is affirmatively misleading." Majority op. at 1.

---

4. Our sun's atmosphere is predominantly comprised of hydrogen (75%) and helium (24%). Katharina Lodders, *Solar System Abundances and Condensation Temperatures of the Elements*, 591 The Astrophysical J. 1220, 1220 (2003) (rounded number to the second significant figure).

## II. Governing Precedent

### A. The Right of Self-Governance and Expectation of Non-Ignorance

Florida citizens have the right "to formulate 'their own organic law.'" *Medical Marijuana I,* 132 So. 3d 786, 794 (quoting *Advisory Op. to Att'y Gen. re Right to Treatment & Rehab. for Non-Violent Drug Offenses*, 818 So. 2d 491, 494 (Fla. 2002)). To avoid undue interference with this right, we have "traditionally applied a deferential standard of review to the validity of a citizen initiative petition." *Id.* Our restraint in this area is longstanding:

> There is no lawful reason why the electors of this State should not have the right to determine the manner in which the Constitution may be amended. . . . Sovereignty resides in the people and the electors have a right to approve or reject a proposed amendment to the organic law of th[e] State, limited only by those instances where there is an entire failure to comply with a plain and essential requirement of [the law].

*Id.* at 795 (second alteration in original) (quoting *Advisory Op. to Att'y Gen. re Right to Treatment & Rehab. for Non-Violent Drug Offenses*, 818 So. 2d at 494 (quoting *Pope v. Gray*, 104 So. 2d 841, 842 (Fla. 1958))).

Consistent with these principles, we take a nonpaternalistic approach to our review, expecting voters to educate themselves regarding the details of a proposed amendment before voting and advising that the ballot summary need not educate voters on collateral implications of a proposed amendment's effects:

> Under our system of free elections, the voter must acquaint himself with the details of a proposed ordinance on a referendum together with the pros and cons thereon before he enters the voting booth. If he does not, it is no function of the ballot question to provide him with that needed education. What the law very simply requires is that the ballot give the voter fair notice of the question he must decide so that he may intelligently cast his vote.

*Advisory Op. to Att'y Gen. re Standards for Establishing Legislative Dist. Boundaries*, 2 So. 3d 175, 185 (Fla. 2009) (quoting *Right to Treatment & Rehab. for Non-Violent Drug Offenses*, 818 So. 2d at 498).

Our review similarly presumes that voters possess a rudimentary knowledge of their government's structure and of the laws governing their conduct. *Fla. Educ. Ass'n v. Fla. Dep't of State*, 48 So. 3d 694, 701 (Fla. 2010) ("This Court presumes that the average voter has a certain amount of common understanding and knowledge."); *Am. Home Assur. Co. v. Plaza Materials Corp.*, 908 So.

2d 360, 375 (Fla. 2005) (Cantero, J., concurring in part and dissenting in part) ("All citizens are presumed to know the law.") (quoting *Hart v. Hart*, 377 So. 2d 51, 52 (Fla. 2d DCA 1979)).

Citizens are also presumed to know what constitutes a federal crime. *See Lambert v. California*, 355 U.S. 225, 228 (1957) ("The rule that 'ignorance of the law will not excuse' is deep in our law . . . ." (quoting *Shevlin-Carpenter Co. v. Minnesota*, 218 U.S. 57, 68 (1910))).

Finally, it is one of the most fundamental and elementary principles of our constitutional republic that no state law—not even a state constitution—can override federal law. *See* U.S. Const., art. VI, cl. 2.

**B. Ballot Summary**

Section 101.161(1), Florida Statutes (2019), requires that each ballot summary[5] be written in "clear and unambiguous language"

---

5. Although the title and summary "must be read together in determining whether the ballot information properly informs the voters," *Advisory Op. to the Att'y Gen. re All Voters Vote in Primary Elections for State Legislature, Governor, & Cabinet*, 291 So. 3d 901, 906 (Fla. 2020) (quoting *Advisory Op. to Att'y Gen. re Voluntary Univ. Pre-Kindergarten Educ.*, 824 So. 2d 161, 166 (Fla. 2002)), I will focus on the summary because that is where the language is found that the majority judges to be misleading.

and provide "an explanatory statement, not exceeding 75 words in length, of *the chief purpose of the measure.*" *Id.* (emphasis added). In plain language, this statute imposes a straightforward legal requirement that the summary unambiguously and succinctly explain the primary legal change *to the Florida Constitution* that the amendment would bring about—and thereby "provide fair notice of the content of the proposed amendment." *All Voters Vote*, 291 So. 3d at 906 (quoting *Advisory Op. to Att'y Gen. re Right of Citizens to Choose Health Care Providers*, 705 So. 2d 563, 566 (Fla. 1998)). The point here is that the statute's directive is solely to explain the Florida constitutional change—with no requirement that the summary provide an explanation of secondary ramifications of the proposed amendment. *See id.* (explaining that the statute does not require an explanation of "possible ramifications" of an amendment). Accordingly, we have "never required that a ballot summary inform voters as to the current state of federal law [or] the impact of a proposed state constitutional amendment on federal statutory law." *Medical Marijuana I*, 132 So. 3d at 808.

We also properly consider "whether the language of the title and summary, as written, misleads the public." *Fla. Educ. Ass'n v.*

- 26 -

*Fla. Dep't of State*, 48 So. 3d 694, 701 (Fla. 2010) (quoting *Fla. Dep't of State v. Slough*, 992 So. 2d 142, 147 (Fla. 2008)).  This aspect of our review necessarily flows from the language of section 101.161(1), requiring that the ballot summary in "clear and unambiguous" language explain the chief purpose of the proposal. We have properly read this language as including an "accuracy" requirement—stating that the substance of the proposal must be "accurately represented on the ballot."  *Armstrong v. Harris*, 773 So. 2d 7, 12 (Fla. 2000) (emphasis omitted).  Therefore, the proponents of the measure cannot use the summary to disguise the measure "as something else."  *Askew v. Firestone*, 421 So. 2d 151, 156 (Fla. 1982).  Stated another way, "[a] ballot title and summary cannot either 'fly under false colors' or 'hide the ball' as to the amendment's true effect."  *Armstrong*, 773 So. 2d at 16.  In lay terms, the statute supports an inquiry into whether the summary would inadvertently trick the voter as to how Florida law would change if the amendment passes.  *Id.*

### C. Stare Decisis

The doctrine of stare decisis requires us to follow the precedent outlined above unless "we are convinced that [it] clearly

conflicts with the law we are sworn to uphold." *State v. Poole*, 297 So. 3d 487, 507 (Fla. 2020). Even clearly erroneous precedent should be maintained and followed based upon citizens' reliance on that precedent in conducting their affairs. *Id.*

Here, reliance interests are at their zenith because citizens rely heavily (if not exclusively) on our precedent when seeking to amend their constitution. Citizens draft the proposal knowing that it will never make the ballot unless we judge their language to be compliant with section 101.161(1). They then expend significant resources to obtain the signatures necessary to trigger our review, with no opportunity to redraft the proposal if we find it deficient. Rather, if their original work product is deemed defective, the citizenry must start again with a new proposal for a later election cycle, at least two years in the future. They must then redraft a new summary and restart the expensive signature-gathering process. These practicalities, and the core right of self-governance they relate to, clearly militate in favor of following the doctrine of stare decisis in the citizen-initiative context, *see Poole*, 297 So. 3d at 507 (identifying reliance as a "critical consideration" in determining whether to adhere to precedent), and underscore why it

is of paramount importance that we faithfully, consistently, and impartially apply our precedent in this area, irrespective of our personal views as to "the merits or wisdom of the proposed amendment," *Advisory Op. to Att'y Gen. re Repeal of High Speed Rail Amendment*, 880 So. 2d 624, 625 (Fla. 2004). Our precedent therefore appropriately dictates that we must "act with extreme care, caution, and restraint before [we] remove[ ] a constitutional amendment from the vote of the people," *Askew*, 421 So. 2d at 156, and also appropriately instructs that "[t]his Court has no authority to inject itself in the process [by blocking a proposed amendment from appearing on the ballot], unless the laws governing the process have been clearly and conclusively violated," *Advisory Op. to Att'y Gen. re Right to Treatment & Rehab. for Non-Violent Drug Offenses*, 818 So. 2d at 494, 498-99, thereby rendering the proposal "clearly and conclusively defective," *id* at 494 (quoting *Floridians Against Casino Takeover v. Let's Help Florida*, 363 So. 2d 337, 339 (Fla. 1978)).

### III.   Analysis

In oral argument, the Attorney General correctly acknowledged that the summary for this proposed constitutional amendment

fairly informs voters of the amendment's chief purpose—to "permit" the adult use of marijuana, with limitations also fairly summarized—and that the summary is not misleading with respect to the changes in Florida law that would occur if the amendment is adopted. The majority does not suggest otherwise. The key point is this: the proposed amendment itself expressly states that certain actions are "permitted," Majority op. at 2-4 (quoting proposed amendment), and the ballot summary says that the amendment "[p]ermits" those actions. Majority op. at 4 (quoting ballot summary). Given the precedent cited above, these observations should end our analysis in favor of approving the measure for placement on the ballot. *See, e.g.*, *Medical Marijuana I*, 132 So. 3d at 808 (approving a ballot summary that contains statements "substantially similar in meaning to the proposed amendment's text").

Yet, in an extraordinarily rare occurrence for this Court, we are declaring a summary to be misleading even though it accurately describes the effect of the amendment using the same operative

language as used in the amendment itself.[6]  The majority reasons

that the summary is misleading because it fails to explain that

adult use of marijuana is not permitted under federal law and that

the proposed Florida constitutional law change would not alter the

federal Controlled Substances Act—contrary to the bedrock

principle that citizens are presumed to know what constitutes a

federal crime, *see Lambert*, 355 U.S. at 228, and in direct violation

of the deferential, nonpaternalistic rules and presumptions that

have historically governed our decisions in this area.  *See, e.g.*,

*Standards for Establishing Legislative Dist. Boundaries*, 2 So. 3d at

185 (explaining that the law does *not* require the ballot summary to

---

6.  In *Detzner v. League of Women Voters of Fla.*, 256 So. 3d 803, 809 (Fla. 2018), we condemned another ballot measure as misleading under similar circumstances.  Writing in dissent, Chief Justice Canady explained:

> The majority's opinion thus repeatedly reveals that the summary is condemned not because it is misleading, but because of what the majority views as deficiencies in the proposed constitutional amendment itself.  This is a clear departure from the fundamental principle of our jurisprudence that in determining the adequacy of a ballot summary, we do not review the merits of the proposed constitutional amendment.

*Id.* at 817.

provide voters with "needed education" regarding "the details of a proposed ordinance on a referendum together with the pros and cons thereon before [entering] the voting booth" (quoting *Advisory Op. to Att'y Gen. re Right to Treatment & Rehab. for Non-Violent Drug Offenses*, 818 So. 2d at 498)); *Fla. Educ. Ass'n v. Fla. Dep't of State*, 48 So. 3d 694, 701 (Fla. 2010) (explaining that this "Court presumes that the average voter has a certain amount of common understanding and knowledge" regarding the structure and operation of their legal and governmental systems); *Medical Marijuana I*, 132 So. 3d at 808 (explaining that we have "never required that a ballot summary inform voters as to the current state of federal law [or] the impact of a proposed state constitutional amendment on federal statutory law").

In *Advisory Opinion to Attorney General re Protect People from the Health Hazards of Second-Hand Smoke*, 814 So. 2d 415, 419 (Fla. 2002), we rejected as "contrary to rational analysis" an argument that voters would be misled by an accurate description of an amendment banning smoking in "indoor workplaces." Opponents of the indoor workplace smoking ban amendment had argued that the ballot summary was misleading when it stated that

the measure would "prohibit tobacco smoking in enclosed indoor workplaces" without "indicat[ing] that smoking would be banned in places like restaurants, which many patrons visit for the sole purpose of relaxing." *Id.* at 418-19. We unanimously dismissed the contention, explaining: "In our view, the argument that Florida citizens cannot understand that a restaurant may be a workplace is contrary to rational analysis." *Id.* at 419.

The majority's reasoning here is similarly "contrary to rational analysis," *id.*, by which I mean that it violates basic principles of logic. This assertion obviously bears some explanation. My challenge in giving this explanation is that although the law is supposed to be governed by "standards of rationality" reflected in the "basic principles of logic," David Barker-Plummer et al., *Language, Proof and Logic* 1 (2d ed. 2011), we do not generally teach logic and rhetoric as part of our core curriculum, even in our law schools.

Even without that education, however, most should be able to recognize the "*non sequitur*" in the majority's analysis. In Latin, *non sequitur* means "it does not follow." *See Merriam-Webster,* https://www.merriam-webster.com/dictionary/non%20sequitur

(last visited Apr. 15, 2021).  It should be intuitively obvious to most that the majority's condemnation of this summary for not explaining federal law is logically irreconcilable with (i.e., does not logically "follow" from) our precedent stating that the summary need only explain the Florida constitutional change being proposed.  I believe that the analogy used in the summary of my position bears repeating.

If you and I were asked on a one-question final exam to list the predominant compounds in the earth's atmosphere and answered nitrogen and oxygen, our answer should be judged as correct because the question only related to the earth's atmosphere which consists primarily of nitrogen (approximately 78%) and oxygen (approximately 21%), with the remaining 1% comprised of various other gases.  *UCAR Center for Science Education*, https://scied.ucar.edu/shortcontent/earths-atmosphere (last visited Apr. 15, 2021).  We would be quite upset, and rightfully so, if we were told by our professor that we had failed the exam because our answer was inaccurate or misleading in that it did not explain that the sun's atmosphere is very different, consisting primarily of hydrogen (75%) and helium (24%).  Katharina Lodders,

*Solar System Abundance and Condensation Temperatures of the Elements*, 591 The Astrophysical J. 1220, 1220 (2003) (rounded number to the second significant figure). Although we would likely be unable to discuss the problem using terms or concepts familiar to those who have studied classical logic, we would certainly be confounded at the irrational explanation and might even recognize the explanation as a *non sequitur*. *See Merriam-Webster*, https://www.merriam-webster.com/dictionary/non%20sequitur (last visited Apr. 15, 2021) (explaining that "we now use *non sequitur* for any kind of statement that seems to come out of the blue"). Our justifiable confusion and anger would be even more profound if the test question itself had plainly stated that our answer need not list compounds predominant in the sun's atmosphere and need not explain differences between the earth's atmosphere and the sun's.

There is no logical difference between my hypothetical professor's illogical explanation for an unjustifiable failing grade and the majority's illogical conclusion that this ballot summary's explanation of the proposed Florida constitutional change is misleading for failing to explain either (1) that the proposed changes

in Florida law would not change federal law, or (2) how Florida law would differ from the federal Controlled Substances Act (assuming that it is not changed) if the Florida ballot measure were to pass. The majority apparently justifies sidestepping our longstanding precedent in this area on grounds that the sponsors were "twice . . . shown the correct" way to address federal law differences in *Medical Marijuana I* and *Medical Marijuana II*. Majority op. at 13-14, note 2. Neither case comes close to holding that federal law implications must be addressed for a summary to comply with the constitutional and statutory standards by which we are to judge the language. To the contrary, and as already addressed, *Medical Marijuana I* expressly states the opposite: that the summary did not need to address or disclose "the current state of federal [controlled substances] law" when explaining the chief purpose of an amendment that was inconsistent with federal law when drafted. *Medical Marijuana I,* 132 So. 3d at 808.

Finally, there is the practical matter of not knowing how federal law will change in the years between the drafting of any ballot summary and a vote on the amendment. This is especially

the case when dealing with a matter like the legalization of marijuana in a federal political landscape that is ever-changing.[7]

## IV.   Conclusion

Today's decision underestimates Florida voters and adds hurdles to the citizen-initiative process that are not supported by the plain language of the governing law or our precedent.  Because the ballot summary in this case complies with the constitutional and statutory requirements by which we are to judge ballot summaries, I would apply our precedent and approve this measure for placement on the ballot.

Original Proceeding – Advisory Opinion – Attorney General

Ashley Moody, Attorney General, Amit Agarwal, Solicitor General, James Percival, Chief Deputy Solicitor General, and Jeffrey Paul DeSousa, Deputy Solicitor General, Tallahassee, Florida,

> for Petitioner

Ashley Hoffman Lukis and George T. Levesque of GrayRobinson, P.A., Tallahassee, Florida,

> for Interested Party, Make It Legal, Florida

---

7.  In a 2020 vote that mostly remained along party lines, the U.S. House of Representatives passed the Marijuana Opportunity Reinvestment and Expungement Act to decriminalize marijuana on the federal level.  H.R. 3884, 116th Cong. (as passed by House of Representatives, Dec. 4, 2020).

Daniel W. Bell, General Counsel, and J. Michael Maida, Deputy General Counsel, Florida House of Representatives, Tallahassee, Florida,

    for Interested Party, Florida House of Representatives

Jeremy D. Bailie of Weber, Crabb & Wein, P.A., St. Petersburg, Florida,

    for Interested Parties, Drug Free America Foundation, Florida Coalition Alliance, National Families in Action, and Smart Approaches to Marijuana

Jeremiah Hawkes, General Counsel, and Ashley Urban, Deputy General Counsel, The Florida Senate, Tallahassee, Florida,

    for Interested Party, The Florida Senate, and Bill Galvano, in his official capacity as President of the Florida Senate

Jason Gonzalez, Daniel Nordby, Benjamin Gibson, Amber Stoner Nunnally, and Rachel Procaccini, Tallahassee, Florida, and Julissa Rodriguez of Shutts & Bowen LLP, Miami, Florida,

    for Interested Parties, Florida Chamber of Commerce, Floridians Against Recreational Marijuana, Save Our Society From Drugs and National Drug-Free Workplace Alliance